[No. B145029. Second Dist., Div. Four. Apr. 18, 2001.]

HOWARD GUNTY PROFIT SHARING PLAN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD M. GREENWOOD et al., Real Parties in Interest.

[No. B145270. Second Dist., Div. Four. Apr. 18, 2001.]

RICHARD M. GREENWOOD et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HOWARD GUNTY PROFIT SHARING PLAN et al., Real Parties in
Interest.

## COUNSEL

Stull, Stull & Brody, Michael D. Braun, Timothy J. Burke; Weiss & Yourman, Kevin J. Yourman and Mark S. Levine for Petitioners in No. B145029 and for Real Parties in Interest in No. B145270.

Gibson, Dunn & Crutcher, Antoinette DeCamp, Dean Stern and Phillip L. Bosl for Petitioners in No. B145270 and for Real Parties in Interest in No. B145029.

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, Manuel Medeiros, Assistant Attorney General, Kenneth Williams and Jill Bowers, Deputy Attorneys General, for Respondent.

**OPINION**

**HASTINGS, J.—**

### BACKGROUND

The Howard Gunty Profit Sharing Plan (the Plan) commenced this action in 1998 on behalf of itself and all others similarly situated, against Bank Plus Corporation, its chief executive officer, and its chief financial officer. The original complaint charged negligent misrepresentation, common law fraud, deceit under Civil Code sections 1709 and 1710, and unlawful market manipulation activity under Corporations Code sections 25400 and 25500.[1]

In March 2000, the Plan brought a motion to be appointed lead plaintiff of the class, and for certification of the class only as to the fourth cause of action, alleging violations of Corporations Code sections 25400 and 25500. On May 3, 2000, the trial court found that the Plan was a "professional plaintiff," that it was not typical of the class, did not have sufficient knowledge of the facts of the case or involvement in it, and was not, therefore, an adequate class representative.[2] The court refused to appoint the Plan as lead plaintiff, and continued the certification motion to an unspecified date.

On June 30, 2000, Gary Feldman sought leave to intervene in the action. The trial court denied the motion after finding Feldman's claims time-barred under Corporations Code section 25506.[3] The matter was set for a status conference on July 18, 2000. At the status conference, plaintiffs were still without a candidate for lead plaintiff, and sought leave to notify the class of their need for alternative class representatives. The court allowed plaintiffs

---

[1] On February 22, 1999, a first amended complaint was filed, showing Robert E. Yelin, individually and on behalf of the Yelin Family Trust, as additional named plaintiffs. There is no motion or order in the parties' appendices regarding the Yelins' intervention, and the parties have offered no explanation of his role in these proceedings. In December 2000, in response to defendants' motion for summary adjudication, the Plan dismissed the causes of action for fraud, deceit, and negligent misrepresentation, as to itself only, leaving only the securities violations.

[2] "The term professional plaintiff generally is used to refer to a plaintiff who is either a frequent filer . . . or a 'hired gun' (one who allows an attorney to sue in his name in exchange for a fee), or both." (*In re Telxon Corp. Securities Litigation* (N.D. Ohio 1999) 67 F.Supp.2d 803, 813.)

[3] The court found that Feldman had originally been a member of the class, but had taken himself out when he became a party to his own lawsuit. Feldman later dismissed his own lawsuit, but since he was no longer a party here, the court concluded he was not entitled to the benefit of the relation-back doctrine. Feldman has appealed from the court's ruling, an issue not addressed here.

to submit a draft of the proposed communication. The court proposed its own form of notice. Defendants then proposed to send a letter in response to plaintiffs', and the court proposed its own form of response.[4]

In a series of hearings, the court heard extensive argument for and against the wording of the letters, as well as testimony regarding the accuracy of statements made in them. The court heard and made suggested changes to language which it considered to be slanted, misleading, or inflammatory, and the parties eventually arrived at language approved by the court.

Plaintiffs and defendants then filed separate petitions for writ of mandate. Plaintiffs' petition asks that we set aside the trial court's imposed edits of its letter seeking a new class representative, and its order authorizing defendants to contact putative class members in response to the letter. Defendants seek to prohibit plaintiffs from any solicitation of a new representative by mass mailing; or, in the alternative, to eliminate from plaintiff's letter any reference to compensation, a boldface reference to loss of rights, and a boldface reference to a deadline; and if plaintiffs' letter is to be permitted, defendants ask that its responsive letter not be edited in any way, unless it is found to be materially inaccurate or incomplete.[5]

We consolidated the petitions and issued an order to show cause on December 1, 2000.[6]

## DISCUSSION

Each party contends that the trial court should not have permitted the other to communicate with the potential class members under the circumstances presented here. Thus, defendants contend that plaintiffs should

---

[4] We refer to the parties by their trial court designations, "plaintiffs" and "defendants," because both sides have filed petitions, and are therefore both petitioners and real parties in interest.

[5] The three-and-one-half-page letter describes the allegations, explains that a class representative is needed, and warns, "your rights to bring suit on these grounds may be affected." The letter informs the recipient that his identity was provided by order of the court, that the attorneys will indemnify for expenses and costs, that attorney fees will come out of any recovery, and that as a class representative, the recipient may be entitled to compensation. Finally, in bold font, the recipient is informed that if willing to serve, "**you must notify plaintiff's counsel by _____.**"

[6] Respondent superior court has filed a return substantively addressing the issues and asking that we deny both petitions. Absent issues which directly impact the efficient operation of the court or the court's budget, the respondent court is not justified in taking an adversary role in writ proceedings. (*Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, 1019-1020. [61 Cal.Rptr.2d 49], disapproved on another point in *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1069, fn. 6 [103 Cal.Rptr.2d 751, 16 P.3d 166].) The superior court's return does not present issues relating to its efficient operations or its budget. We strike its return.

not be permitted to send a letter soliciting a new class representative, and plaintiffs contend that defendants should not be permitted to send a letter urging potential class members not to participate.

Plaintiffs and defendants both acknowledge that there is scant California authority regarding communication with potential class members prior to certification. Plaintiffs contend that their communication with the potential class members is constitutionally protected by the First Amendment, as commercial speech, so long as it is not false, misleading, or deceptive. (See *Shapero v. Kentucky Bar Assn.* (1988) 486 U.S. 466, 472 [108 S.Ct. 1916, 1921, 100 L.Ed.2d 475].)

Defendants contend that plaintiffs' proposed communication is improper solicitation, which should not be condoned by the court, because plaintiffs initiated this action with a "professional plaintiff" whose credibility is questionable, under circumstances which make it apparent that the attorneys are in charge of the litigation, not a genuine plaintiff.

To put the issues into perspective, we must begin, not with contentions regarding limitations on speech, but by examining plaintiffs' motion to certify the class, and to approve the Plan as lead plaintiff, which was heard several months before the hearings on the proposed communications.

To obtain class certification, the proponents of a consumer class action have the burden to prove not only that there are questions of law or fact common to the class, and that the claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class, they must also prove that the representative plaintiffs will fairly and adequately protect the interests of the class. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; Civ. Code, § 1781, subd. (b)(2)-(4).) After hearing the parties' argument and evidence in the form of declarations and excerpts from depositions, the trial court found that there were common questions of law or fact. However, the court found the Plan to be atypical of the class, and that it would not fairly or adequately protect its interests, and denied the Plan's motion for appointment as lead plaintiff. It did not, however, deny the motion for class certification. Instead, the court continued it indefinitely to give plaintiffs the opportunity to find a suitable representative.

In its written order, the court made extensive findings. It found that the Plan was a "professional plaintiff," having filed approximately 20 lawsuits alleging fraud and mismanagement in securities or derivative actions, and represented in substantially all of them by its attorneys in this action, Stull,

Stull & Brody, with the assistance in some of them by Weiss & Yourman, also counsel in this action. The court also found the Plan, acting through its administrator, Caesar, to be an inadequate representative, because Caesar demonstrated inadequate knowledge about the case, and his credibility was weak. The court concluded, "It is clear to this court that the attorneys, rather than the Plan, are in control of this litigation."

As a general proposition, class actions are favored in California. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 457 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; see also *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 807-808 [94 Cal.Rptr. 796, 484 P.2d 964].) Federal law also favors class actions. Rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) expresses " 'a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit.' [Citation.]" (*Gulf Oil Co. v. Bernard* (1981) 452 U.S. 89, 99-100, fn. 11 [101 S.Ct. 2193, 2199, 68 L.Ed.2d 693].) In furtherance of the policy favoring class actions, courts have allowed plaintiffs the opportunity to amend their complaints to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative, when the named plaintiff has been found inadequate. (See, e.g., *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113].) For example, plaintiffs are permitted to conduct discovery to find a suitable representative (see, e.g., *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794, 799 [110 Cal.Rptr. 302]) and they are permitted precertification communication with potential class members for the purpose of investigation and preparation of their claims or defenses. (See, e.g., *Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867, 873 [212 Cal.Rptr. 773].)

But the tide has turned and not all class actions are favored. "In recent years, concern over potentially meritless securities lawsuits filed by 'professional' plaintiffs abounded." (*AUSA Life Ins. Co. v. Ernst and Young* (2d Cir. 2000) 206 F.3d 202, 218.) Companies choose to settle, " 'rather than face the enormous expense of discovery and trial,' " which has created " 'an in terrorem effect on Corporate America.' " (*EP MedSystems, Inc. v. EchoCath, Inc.* (3d Cir. 2000) 235 F.3d 865, 881.)

In 1995, Congress passed the Private Securities Litigation Reform Act, which imposes stricter pleading requirements, limits precertification discovery, and limits the number of actions in which a person may be a lead plaintiff. (*AUSA Life Ins. Co. v. Ernst and Young, supra,* 206 F.3d at p. 218; see 15 U.S.C. § 77a et seq.) The purpose of the act was, among other things,

to empower investors to exercise primary control over private securities litigation, instead of their lawyers, and to encourage defendants to fight abusive claims. (*AUSA Life Ins. Co. v. Ernst and Young, supra,* 206 F.3d at p. 218; see also *S.G. Cowen Sec. v. U.S. Dist. Court for N.D. of CA* (9th Cir. 1999) 189 F.3d 909, 911.) Indeed, lawyer-driven litigation and professional plaintiffs are the primary abuses which led Congress to enact the legislation. (See *Burke v. Ruttenberg* (N.D.Ala. 2000) 102 F.Supp.2d 1280, 1305; *In re Telxon Corp. Securities Litigation, supra,* 67 F.Supp.2d at p. 815.)

In 1998, Congress went further. It amended title 15 of the United States Code section 77p, to prohibit class actions by private parties, in state or federal court, with exceptions not applicable here, based upon state statutory or common law, which allege "(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or [¶] (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." (15 U.S.C. § 77p(b).)[7]

While class actions are an important means to *prevent* a failure of justice in our judicial system, they also carry the potential to create injustice. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) "[The] potential for misuse of the class action mechanism is obvious. Its benefits to class members are often nominal and symbolic, with persons other than class members becoming the chief beneficiaries." (*Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 339 [100 S.Ct. 1166, 1174, 63 L.Ed.2d 427].)

■ Despite its general support for class actions, our Supreme Court "has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. [Citations.] *It has also urged that the same procedures facilitating proper class actions be used to prevent class suits where they prove nonbeneficial."* (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 459, italics added.) Once the trial court has identified a potential abuse, it "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel . . . ." (*Gulf Oil Co. v. Bernard, supra,* 452 U.S. at p. 100 [101 S.Ct. at p. 2200].) A trial court acts properly when it refuses to certify class actions in which the named plaintiff is simply

---

[7]This action would have been barred under section 77p. However the statute applies only to those actions commenced on or after November 3, 1998. This action was filed on October 19, 1998.

" 'lending his name to a suit controlled entirely by the class attorney.' " (*Kirkpatrick v. J.C. Bradford & Co.* (11th Cir. 1987) 827 F.2d 718, 727.)[8]

Here, the findings by the court in connection with its decision that the Plan was not an appropriate party plaintiff signal to us a potential for abuse in this particular action. We have found no reported case in which a trial court has permitted amendment, discovery, or investigation, for the purpose of finding and substituting an appropriate class representative, after an express finding that the action was filed by a professional plaintiff and controlled by attorneys. Nor have we found any reported case in which a court has exercised similar discretion in favor of any party found to have abused the class-action procedure in some other way. In *Atari, Inc. v. Superior Court, supra,* 166 Cal.App.3d at page 873, precertification investigation or other communication with potential class members was held to be appropriate, *absent a showing of actual or threatened abuse.* In *Budget Finance Plan. v. Superior Court, supra,* 34 Cal.App.3d at page 799, the plaintiffs were permitted to conduct discovery to find a suitable representative after the trial court found a *prima facie proper class action.*

Precertification communication carries the potential for abuse. Thus, any "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." (*Gulf Oil Co. v. Bernard, supra,* 452 U.S. at p. 101 [101 S.Ct. at p. 2200].) The trial court should identify the potential abuses and weigh them against the rights of the parties under the circumstances. (*Id.* at p. 102 [101 S.Ct. at p. 2201].) We are not convinced from the record that the trial court did weigh the potential abuses against the rights of the parties in granting a continuance or in addressing the issue of solicitation.

At the hearing, the court stated to the parties: "I want to move this case along. I want to make sure that the case is fairly presented for the plaintiff so that they can get a class representative, and that's what my goal here is." The court then granted an open continuance to allow for the solicitation. It is not the court's role to encourage or discourage prosecution of class actions. Thus, we believe that remand is necessary for the court to readdress this matter.

In reassessing the matter, the court must acknowledge its finding that the Plan is a professional plaintiff and not an appropriate representative. This

---

[8]Our Supreme Court has suggested that in the absence of controlling California authority, trial courts should utilize the class action procedures of the federal rules. (*La Sala v. American Sav. & Loan Assn., supra,* 5 Cal.3d at p. 872.)

finding has placed the court in the anomalous position of approving solicitation of a lead plaintiff for a class action which the court might well have cause to refuse to certify at a later date. To this end, we suggest that on remand, the trial court calendar a hearing on plaintiffs' motion to certify. If, upon weighing the findings already made, any further evidence of abuse, the rights of the parties, and the policies underlying class action procedures, the trial court determines that plaintiffs have established a prima facie proper class action, it will then be at the appropriate starting point to determine what controls, if any, should be imposed on communications to the potential class members.

Plaintiffs contend that since their communication with potential class members is protected commercial speech under the First Amendment, the only limitation is that it not be false, misleading, or deceptive. (See *Shapero v. Kentucky Bar Assn., supra*, 486 U.S. at p. 472 [108 S.Ct. at p. 1921].) We disagree. In the context of a class action, it is the court's authority and duty to exercise control over the class action to protect the rights of all parties, and to prevent abuses which might undermine the proper administration of justice. (See *Gulf Oil Co. v. Bernard, supra*, 452 U.S. at pp. 100-103 [101 S.Ct. at pp. 2200-2201].)

Although traditional concerns about "stirring up litigation" have been discredited by the Supreme Court as the sole reason to bar attorney advertising and written solicitations (see *Zauderer v. Office of Disciplinary Counsel* (1985) 471 U.S. 626, 642 [105 S.Ct. 2265, 2277, 85 L.Ed.2d 652]), the court has not retreated from its suggestion in *Gulf Oil*, that such concerns are relevant to determining what limitations are consistent with the policies underlying class action procedures. (See *Gulf Oil Co. v. Bernard, supra*, 452 U.S. at p. 99, fn. 11 [101 S.Ct. at p. 2199].) We recognize that the court did not reach the constitutional issue in *Gulf Oil*, but we shall follow the lead of its dictum, that the "constitutional issue should await a case with a fully developed record concerning possible abuses of the class-action device." (*Gulf Oil Co. v. Bernard, supra*, 452 U.S. at p. 102, fn. 15 [101 S.Ct. at pp. 2200-2201].) In this case, such a record should include a carefully crafted order demonstrating the trial court's weighing of any abuses or potential abuses against the rights of the parties, including potential class members, and the integrity of the litigation process.

Should the trial court find itself and the parties back in the position of crafting a letter notifying the potential class members of the status of the litigation and the need for a lead plaintiff, the court will have the appropriate record to make specific findings which "reflect a weighing of the need for a

limitation and the potential interference with the rights of the parties." (*Gulf Oil Co. v. Bernard, supra,* 452 U.S. at p. 101 [101 S.Ct. at p. 2200].) Communications that misrepresent the status or effect of the pending action, or which may cause confusion, adversely affect the administration of justice. (*Gulf Oil Co. v. Bernard, supra,* 452 U.S. at p. 101, fn. 12 [101 S.Ct. at p. 2200].) The court should take care that any communication approved by it be completely neutral in language, merely notifying of the status of the lawsuit, the need for a lead plaintiff, and the consequences of dismissal if no qualified plaintiff steps forward.

## DISPOSITION

The order to show cause is discharged, and the petitions for writ of mandate are granted. The matter is remanded to the trial court with directions to vacate the orders previously made and for further hearing consistent with this opinion to determine class certification and the need for court intervention in the communication process, if necessary. Each party shall bear its own costs.

Vogel (C. S.), P. J., and Curry, J., concurred.