[No. G036211. Fourth Dist., Div. Three. Mar. 30, 2006.]

EXPERIAN INFORMATION SOLUTIONS, INC., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
MELLONIE SORENSEN, Real Party in Interest.

124

**COUNSEL**

Jones Day, Thomas R. Malcolm, Daniel J. McLoon, Kevin Dorse and Lisa C. McCurdy for Petitioner.

No appearance for Respondent.

Lakeshore Law Center and Jeffrey N. Wilens for Real Party in Interest.

O<small>PINION</small>

**FYBEL, J.—**

## INTRODUCTION

The trial court denied real party in interest (plaintiff) Mellonie Sorensen's motion for class certification. Thereafter, on a motion by Sorensen pursuant to an earlier protective order by stipulation, the trial court approved a letter to former potential class members identified in discovery covered by that protective order. The letter would inform recipients they might have claims subject to running statutes of limitation and request each recipient's consent to be contacted by Sorensen's counsel to determine whether he or she had evidence relevant to the issue of Sorensen's damages. Experian Information Solutions, Inc. (Experian), filed a petition for writ of mandate, challenging the trial court's approval of the letter.

We hold: (1) after class certification has been denied, a trial court cannot order notification of former potential class members of their possible legal claims; (2) the trial court did not abuse its discretion by concluding portions of the letter were reasonably calculated to lead to the discovery of admissible evidence on the issue of plaintiff's statutory damages; and (3) to be approved, the letter must be completely redrafted to include only statements relevant to plaintiff's request for consent to contact the recipients for such a discovery purpose and to also minimize intrusions upon the recipients' privacy rights, as detailed *post* in this opinion. Accordingly, we grant the petition in part and deny it in part with directions.

## BACKGROUND

Sorensen filed her second amended complaint against defendants Household Finance Corporation (HFC), ARS Recovery Services, Inc., and Doe defendants Access Recovery Services, Collins Financial Services, Inc. (Collins), and Experian (served as Does Nos. 1 through 3, respectively). The second amended complaint alleged claims for negligence against HFC and Collins, violation of the Consumer Credit Reporting Agencies Act (CCRAA)[1] against Experian, and unfair competition against all defendants. The claims were based on allegations that collection accounts were reported to Experian regarding Sorensen and approximately 565 other debtors, and that the original delinquency dates for each of the reported collection accounts had been changed to a later date before being reported to Experian, causing the collection accounts to be displayed on Sorensen's and others' credit reports

---

[1] Civil Code section 1785.1 et seq.

for a longer period of time than allowed by the CCRAA. Sorensen alleged Experian violated the CCRAA by providing inaccurate reports, causing actual damage to Sorensen and others similarly situated.

In January 2005, the trial court signed and filed a stipulated protective order (the Collins stipulated protective order) which stated, "WHEREAS, [Collins] purchased debt from [HFC] including plaintiff's debt; [¶] WHEREAS, COLLINS on August 2, 2002, sold a portion of the HFC debt to ACCESS RECOVERY GROUP, including plaintiff's debt; [¶] WHEREAS, plaintiff contends that ACCESS RECOVERY GROUP and ACE RECOVERY SERVICES are in some manner related; [¶] WHEREAS, plaintiff contends in this litigation that she was damaged as a result of inaccurate information regarding her HFC debt that was supplied to various credit reporting agencies including defendant [Experian] by ACE RECOVERY SERVICES, which caused the reporting period for plaintiff's HFC debt to be improperly extended for two years; [¶] WHEREAS, plaintiff contends that the scope of her proposed class in this litigation consists of those who are similarly situated to her, to wit, those persons whose HFC debt was sold by COLLINS to ACCESS RECOVERY GROUP on August 2, 2002 and whose HFC debt information was subsequently incorrectly reported to EXPERIAN resulting in the reporting period for the HFC debt to be improperly extended; [¶] WHEREAS, plaintiff contends that she needs COLLINS to provide in response to her discovery sufficient information regarding the HFC debt sold by COLLINS to ACCESS RECOVERY GROUP in order that plaintiff can request EXPERIAN through discovery to provide information regarding the HFC debt to determine if any of the persons whose HFC debt was sold by COLLINS to ACCESS RECOVERY GROUP are similarly situated to her; [¶] WHEREAS, COLLINS contends that the HFC debt information sought by plaintiff through discovery in this litigation is confidential and not otherwise subject to discovery by plaintiff at this point in this litigation; [¶] Plaintiff and COLLINS hereby stipulate as follows: [¶] COLLINS agrees to provide the debtor name, HFC account number, debtor social security number, debt delinquency date and debt charge off date for the HFC debt sold by COLLINS to ACCESS RECOVERY GROUP on August 2, 2002 and as reported to ACCESS RECOVERY GROUP by COLLINS; [¶] *Plaintiff agrees to maintain the confidentiality of this HFC debt information and further agrees that the only use that she will make of this HFC debt information will be to provide it to EXPERIAN for purposes of conducting discovery in this litigation regarding the proposed class members.* [¶] *Plaintiff and COLLINS agree that plaintiff may not use the HFC debt information for any other*

*purpose including, but not limited to, contacting any HFC debtors without prior leave of court following a noticed motion.*" (Italics added.)[2]

Sorensen filed a motion for class certification. While Sorensen's motion was pending, Collins and HFC were dismissed from the case through summary judgment. The trial court denied Sorensen's motion for class certification, stating in part, "[t]his case is not appropriate for class treatment. The problems identifying the class members, the difference in the damages suffered, etc. are too great to render class treatment the appropriate method of resolving this case. [¶] The class definition is not correctly stated. The definition urged in this motion is not the same as the definition set forth in the operative complaint. The definition does not reference specific dates to which the litigation applies. [¶] The common issues of fact and/or law do not predominate over individual questions."

The trial court's order further stated, "[p]laintiff also runs into trouble with the damages aspect of the claims. It is impossible to tell how, if at all, any of the individual class members were damaged. The alleged inaccurate reporting may have resulted in denial of credit or a higher interest rate on a loan, but it's impossible to tell. To do so would require an individual analysis of each class member['s] credit history, report, etc. [¶] Because the common issues of fact and law do not predominate over the individual issues, class certification is not appropriate."

After her motion for class certification had been denied,[3] Sorensen filed a motion seeking relief from the Collins stipulated protective order. Sorensen sought permission to use the names of debtors provided by Collins under that order to mail a proposed letter to those debtors notifying them that they might have claims subject to running statutes of limitations and requesting each recipient's consent to be contacted by Sorensen's counsel to determine whether he or she has evidence relating to the issue of Sorensen's damages. Experian opposed the motion.

Before the hearing on Sorensen's motion, the trial court issued a tentative ruling denying it. The tentative ruling stated in part, "[p]laintiff may be able to send the letter without violation of the Rules of Professional Conduct, but her alleged need for the information does not outweigh the individual's right to privacy. The information was wil[l]fully provided by Collins on the express condition 'the only use that she will make of this HFC debt

---

[2] Sorensen used the information provided under the Collins stipulated protective order to seek discovery from Experian as provided for under that order. Experian produced the additional information about the debtors' accounts subject to two other stipulated protective orders, which are not relevant to the issues raised in this proceeding.

[3] The issue of the merits of the denial of the class-certification motion is not before us.

information will be to provide it to Experian for purposes of conducting discovery in this litigation regarding the proposed class members.' [¶] If Plaintiff made a request to contact some of the purported class members prior to her motion for certification, this Court would have allowed the communication *only* through a neutral third party and would release the personal information only if the particular individual agreed to do so."

At the hearing, Sorensen's counsel suggested modifications to the proposed communication, including the use of a neutral third party. The trial court decided that some form of communication to other debtors should be allowed and ordered the parties to meet and confer on the form of such a proposed letter. By the continued hearing in October 2005, the parties had failed to agree on the form of a proposed letter. The trial court reviewed a second letter proposed by Sorensen's counsel, and made additional revisions.

The revised proposed letter which was preliminarily approved by the trial court includes the date and neutral third party's letterhead, stating, "Rosenthal & Company, LLC [¶] Re: Sorensen v. Household Finance [¶] P. O. Box 6177 [¶] Novato, CA 94948-6177." The letter states the following:

"Dear [recipient]:

"You are receiving this letter because you may have been a member of a proposed Class Action against various defendants including Experian credit bureau and Ace Recovery Services, a collection agency. Your *legal deadline* to bring a claim against these defendants may have been affected by a recent court ruling.

"In May 2003, Mellonie Sorensen filed a proposed class action against these and other defendants. Business records showed that you may have been a member of the proposed class because:

"1. You had a debt to Household Finance Corporation in the early or mid 1990's.

"2. The debt was sold to various entities and might or might not have been reported on your Experian credit report by Ace Recovery Services.

"3. Ace may have inaccurately reported the delinquency information about your debt. The result may have been that the information remained on your credit report longer than it should have.

"On August 25, 2005, the Orange County Superior Court denied plaintiff's motion to certify a class. That means currently only Ms. Sorensen can seek

compensation in this lawsuit. The fact that you are receiving this notice does not mean that you have a claim or that you have been damaged. You should consult legal counsel with any questions you may have regarding your legal rights.

"Finally, even if you are not interested in pursuing this matter on behalf of yourself, Ms. Sorensen is requesting that you allow her attorney to contact you to determine whether you possess evidence that could be of value in the prosecution of her lawsuit. If you are willing to provide this cooperation, please let the Neutral know that.

"The Court has appointed Rosenthal & Company as a Neutral person you may contact for further information. Their contact information is as follows:

*"Rosenthal & Company, LLC*

*"Phone Number 800-207-0343*

"Reference: Sorensen v. Household Finance

"The sending of this letter has been approved by Order of the Orange County Superior Court."

Experian's counsel asked the trial court to stay entry of the order approving the letter for a time period sufficient to enable Experian to consider its appellate options. The trial court agreed and set another status conference for final approval of the letter.

Experian filed a petition for writ of mandate on October 21, 2005. We issued an order to show cause on November 9, 2005, scheduled additional briefing, and held oral argument.

## DISCUSSION

### I.

#### THE TRIAL COURT ERRED BY APPROVING PORTIONS OF THE LETTER NOTIFYING NONPARTIES OF THEIR POTENTIAL LEGAL RIGHTS.

At the hearing, the trial court stated, "[i]t seems to me that we might be able to fashion some sort of notice that could be sent by a neutral that would put these people on notice that they may have a cause of action which the statute of limitations is running on, and if they wish to pursue it, they

should." Experian argues, "a court has no authority to regulate or otherwise interject itself into matters outside the specific controversy before it."

The record is clear that the trial court did not interject itself, uninvited, into the parties' dispute about the letter. The trial court did not order sua sponte, much less suggest, that such a communication be made. It was Sorensen's counsel who sought to send the letter and filed a noticed motion to obtain court approval to do so pursuant to the terms of the Collins stipulated protective order. The issue whether the letter may be sent was squarely before the trial court.

Sorensen had obtained the identities of the proposed recipients of the letter through a pre-class-certification-motion discovery request propounded on Collins. Collins provided that information within the context of the Collins stipulated protective order prohibiting Sorensen from using that information for any other purpose than as stated in that order unless she first filed a noticed motion and obtained court approval. After her motion for class certification was denied, Sorensen sought to communicate with the former potential class members using information she had obtained through the discovery process to "notify [them] that the court denied class certification and the statute of limitations on their claims is going to expire soon."

■ What is the legal basis for a court-approved communication alerting nonparties to potential claims against a party? In her return to the petition, Sorensen generally argues, "[a]lthough Experian tries to turn the table on [Sorensen] and place the burden on [Sorensen] to establish judicial authority allowing her to contact the other victims, [Sorensen] already has a First Amendment right to communicate with whomever she wishes." The United States Supreme Court in *Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20, 32 [81 L.Ed.2d 17, 104 S.Ct. 2199], however, held, "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit."

■ There is ample precedent for *precertification* communication by the plaintiff with potential class members. (See, e.g., *Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 778–779 [40 Cal.Rptr.3d 575]; *Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 300–301 [135 Cal.Rptr.2d 90]; *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 578 [105 Cal.Rptr.2d 896] [the plaintiffs "are permitted precertification communication with potential class members for the purpose of investigation and preparation of their claims or defenses"].) This precertification discovery is based on the well-established policy acknowledging the importance of class actions in California. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434 [97 Cal.Rptr.2d 179, 2 P.3d 27] ["[c]ourts

long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system"].)

However, after a class-certification motion has been denied, the plaintiff represents himself or herself only, not putative class members. In *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732], our Supreme Court recognized that an order disposing of class claims "is tantamount to a dismissal of the action as to all members of the class other than plaintiff." Thus, court approval of communications after a class-certification motion has been denied involves a different analysis than approval of precertification communications.

After a class-certification motion is denied, can a court order a plaintiff or a neutral third party to send a letter to former potential class members notifying them of possible claims against the defendant? No. There is no legal basis to permit such a communication.

■ Indeed, in *Woosley v. State of California* (1992) 3 Cal.4th 758, 793 [13 Cal.Rptr.2d 30, 838 P.2d 758], the California Supreme Court rejected the plaintiff's argument that if his class claim were disallowed, " 'notice would have to be given to each putative class member that (1) they were entitled to a refund of use taxes and license fees, and (2) the time to file a claim for refund was running from the date of notice.' " The Supreme Court stated, "[w]e disagree . . . with plaintiff's contention that such notice is required. [¶] Whatever merit there may be in plaintiff's argument that the time for putative class members to file claims has been tolled, we are unaware of any requirement that notice be given to persons affected by such tolling of the period in which to file a claim. The decision in *American Pipe [& Construction Co. v. Utah* (1974) 414 U.S. 538 [38 L.Ed.2d 713, 94 S.Ct. 756]] required only that persons who will be included in the class be notified so that they have an opportunity to opt out of the class and thus not be bound by the resulting judgment. Neither the decision in *American Pipe, supra,* 414 U.S. 538, nor any other authority of which we are aware, requires that persons who are outside the class be notified of that fact." (*Ibid.*)

■ We recognize that with regard to the Supreme Court's holding in *Woosley v. State of California, supra,* 3 Cal.4th 758, 793, there is a difference between not being *required* to send out a notice regarding possible claims and being *prohibited* from doing so. Nevertheless, the Supreme Court's rationale in *Woosley* is consistent with our analysis there is no legal basis supporting court-approved notifications of possible rights to putative class members after a motion for class certification has been denied.

In non-class-action litigation, it is not the court's role to order notification to third parties of their possible legal claims. In our view, such a role is

inconsistent with *Woosley v. State of California, supra,* 3 Cal.4th 758, 793, and draws the trial court's impartiality into question. Thus, after class certification has been denied by a trial court, court-ordered notifications to former, potential class members that they might have legal claims against a defendant are impermissible. The trial court, therefore, erred by approving a letter containing such notifications.

Nothing in this opinion prohibits a plaintiff's counsel from communicating with potential clients and witnesses whose identities are not covered by a protective order as long as such communications are permitted under the California Rules of Professional Conduct.

## II.

### The Trial Court Did Not Err by Concluding Portions of the Letter Were Reasonably Calculated to Lead to the Discovery of Admissible Evidence on the Issue of Sorensen's Damages.

Experian argues that Sorensen "cannot demonstrate any genuine discovery need for the information she purports to be seeking" through the letter, and that any harm suffered by others as a result of Experian's conduct is irrelevant to Sorensen's claim for punitive damages.

"[A]ppellate review of discovery rulings is governed by the abuse of discretion standard. [Citation.]" (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061 [95 Cal.Rptr.2d 864]; see also *Best Buy Stores, L.P. v. Superior Court, supra,* 137 Cal.App.4th 772, 779.)

Under Sorensen's claim against Experian for violation of the CCRAA, she may be able to recover statutory "[p]unitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the court deems proper" if she proves a "willful violation" of the CCRAA. (Civ. Code, § 1785.31, subd. (a)(2)(B).) Sorensen argues she was the victim of multiple violations in this case, rendering her eligible to receive an award of punitive damages ranging from $800 to $40,000.

Evidence other debtors were similarly subjected to inaccurate debt reporting could support Sorensen's claim that the scale of Experian's wrongful conduct was significant. With regard to punitive damages, in *Johnson v. Ford Motor Co.* (2005) 35 Cal.4th 1191, 1207–1208 [29 Cal.Rptr.3d 401, 113 P.3d 82], the California Supreme Court stated, "[n]othing the high court has said about due process review requires that California juries and courts

ignore evidence of corporate policies and practices and evaluate the defendant's harm to the plaintiff in isolation. [¶] California law has long endorsed the use of punitive damages to deter continuation or imitation of a corporation's course of wrongful conduct, and hence allowed consideration of that conduct's scale and profitability in determining the size of award that will vindicate the state's legitimate interests. [Fn. omitted.] We do not read the high court's decisions, which specifically acknowledge that states may use punitive damages for punishment and deterrence, as mandating the abandonment of that principle." In this case, evidence concerning the scale of any pertinent improper reporting therefore would be reasonably calculated to lead to the discovery of admissible evidence supporting Sorensen's claims for recovery in the upper range of available punitive damages for the CCRAA violations.[4]

### III.

#### PRIVACY RIGHTS OF THE LETTER'S RECIPIENTS.

Citing *White v. Davis* (1975) 13 Cal.3d 757, 773–774 [120 Cal.Rptr. 94, 533 P.2d 222] for the proposition " '[t]he right of privacy is the right to be left alone,' " Experian argues: "Here, Respondent Superior Court has authorized Real Party's counsel to use the personal and private information and mail the proposed Notice to over five hundred individuals who are not parties to the underlying action, and who have never consented to the disclosure and use of their names for this purpose. The Court's actions plainly will result in an intrusion upon the privacy rights of those individuals." (See *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 359 [99 Cal.Rptr.2d 627] [acknowledging individuals' "substantial interest in the privacy of their home"].)

In *Planned Parenthood Golden Gate v. Superior Court, supra,* 83 Cal.App.4th at page 357, the appellate court stated, " ' "[w]here discovery involves matters encompassed by the right to privacy, courts recognize that 'judicial discovery orders inevitably involve *state-compelled* disclosure . . . .' [Citation.] Therefore, in reviewing a party's resistance to a discovery order, based on the claim that it entrenches upon a constitutional right, we treat the

---

[4] In *Parris v. Superior Court, supra,* 109 Cal.App.4th 285, 300–301, the court held an additional balancing test "is properly employed in ruling on discovery motions in aid of communications with potential class members. Therefore, when ruling on [the plaintiffs'] discovery motion, in addition to applying the normal rules governing discovery motions, the trial court must also expressly identify any potential abuses of the class action procedure that may be created if the discovery is permitted, and weigh the danger of such abuses against the rights of the parties under the circumstances." Here, class certification has been denied and the intended recipients of the letter are no longer proposed members of the class. The balancing test set forth in *Parris* is therefore inapplicable at this stage of the litigation, and the "normal rules governing discovery motions" apply. (*Ibid.*)

compelled disclosure as a product of state action subject to constitutional constraints. [Citation.]" ' [Citation.] [¶] 'The constitutional right to privacy is not absolute and must therefore be balanced against other important interests.' " The appellate court further stated, "[t]he trial court has discretion to resolve discovery disputes. However, the court abuses that discretion if it fails to undertake the required balancing of the privacy interests against the state interest in compelling disclosure." (*Id.* at p. 358.)

As discussed *ante*, the only permissible interest (of those interests proposed by Sorensen) served by sending out the letter is the facilitation of Sorensen's ability to conduct discovery in her individual case against defendants. Against this interest, we review the trial court's balance of the degree the recipients' privacy interests are infringed and determine whether the letter sufficiently minimizes any such infringement.

Because the identities of the proposed recipients are already known to Sorensen through the Collins stipulated protective order, the mailing of the letter would not result in any further disclosure of the recipients' identifying information other than to the neutral third party appointed by the court. The letter contains no contact information for Sorensen's attorney and is written on the neutral third party's letterhead. We approve of the use of a neutral third party in cases such as this to lessen the extent of any infringement on the recipients' privacy rights. Our approval of this procedure is consistent with a panel of this court's recent decision in *Best Buy Stores, L.P. v. Superior Court, supra,* 137 Cal.App.4th at pages 778–779, holding the use of a neutral third party to facilitate precertification communications aids in the effort to protect the recipients' privacy rights.

The letter, however, must do more to protect the recipients' privacy rights. The letter as it exists now does not require written consent to being contacted. It requests the recipient's consent to "allow [Sorensen's] attorney to contact [him or her] to determine whether [he or she] possess[es] evidence that could be of value in the prosecution of her lawsuit" and states, "[i]f you are willing to provide this cooperation, please let the Neutral know that." Under the proposed letter, the recipient need only telephone the neutral third party and ask to be put on the list of persons who have consented to contact by Sorensen's counsel. A better and acceptable means of establishing the recipients' consents to be contacted is through a written, signed authorization. (Accord, *Best Buy Stores, L.P. v. Superior Court, supra,* 137 Cal.App.4th at pp. 778–779 [requiring written authorization to be contacted by counsel signed by recipient of precertification communication].) The letter must also include a statement that the recipient's failure to submit a signed authorization means the recipient will not be contacted by Sorensen's counsel. These additional protections must be incorporated into the letter. In addition, the last line of the

letter, which states "[t]he sending of this letter has been approved by Order of the Orange County Superior Court," must be deleted. Such language suggests the trial court requests or urges the recipient to cooperate in the discovery process and to relinquish privacy rights.

## IV.

### SUMMARY OF DIRECTIONS FOR THE TRIAL COURT.

The following provides the trial court with specific requirements for an acceptable letter: We conclude the trial court must discard the current letter, start over, and only approve a new proposed letter, if any, which satisfies the following conditions: (1) there shall be nothing in the letter advising the recipients of their possible legal rights, as explained in detail herein; (2) the only statements in the new letter should be those necessary to request the recipients' written consents to be contacted by Sorensen's counsel in connection with her lawsuit against Experian with regard to Sorensen's own claims; (3) the recipients' consents to be contacted by Sorensen's counsel must be communicated to the third party through a written authorization signed by each recipient; (4) the letter must be written on the neutral third party's letterhead, and must not identify Sorensen's counsel or provide his contact information; (5) the letter must contain a statement that the failure to submit a signed authorization means the recipient will not be contacted by Sorensen's counsel; and (6) the sentence in the current letter that "[t]he sending of this letter has been approved by Order of the Orange County Superior Court" must be deleted.

## CONCLUSION, DISPOSITION, AND ORDER

By approving portions of the letter designed to notify the recipients of their possible legal rights, the trial court erred because there is no legal basis for so notifying them. The trial court did not err by determining portions of the letter were reasonably calculated to lead to the discovery of admissible evidence on the issue of Sorensen's damages. The letter must be redrafted to eliminate all portions not relevant to Sorensen's request for consent to contact for discovery relating to her own claims, and to minimize intrusions upon the recipients' privacy rights, as detailed *ante* in this opinion.

Accordingly, Experian's petition for writ of mandate is granted in part and denied in part with directions that the trial court only approve a redraft of the letter, if any, as set forth in this opinion. Our previously issued stay of the trial court proceedings is vacated.

Let a writ of mandate issue directing the trial court to conduct further proceedings consistent with this opinion.

Sills, P. J., and Aronson, J., concurred.