[S.F. No. 24225. June 15, 1981.]

HAROLD H. RICHMOND et al., Plaintiffs and Appellants, v. DART INDUSTRIES, INC., et al., Defendants and Respondents; TAHOE DONNER ASSOCIATION, Intervener and Respondent.

COUNSEL

Harold A. Berliner, Richard F. Ellers, James L. Porter and Wood, Porter & Simon for Plaintiffs and Appellants.

Severson, Werson, Berke & Melchior, Kurt W. Melchior, Jan T. Chilton, Kronick, Moskovitz, Tiedemann & Girard, Adolph Moskovitz and James E. Thompson for Defendants and Respondents.

Lawrence L. Hoffman and Hoffman & Linde for Intervener and Respondent.

OPINION

**BIRD, C. J.**—May a trial court deny a motion to certify a class if the defendants are able to show there was antagonism to the lawsuit on be-

half of some absent class members? A secondary issue centers on whether the plaintiffs' prayer for rescission and punitive damages prevents the use of a class action suit.

## I.

Tahoe Donner Subdivision is a recreational home site with approximately 6,000 lots near Truckee, California. Dart Industries, Inc. (Dart) developed the subdivision in 1971 and sold approximately 2,600 lots by 1976. Then, 157 past and present owners at Tahoe Donner[1] filed suit based on claims of fraud and violations of the Subdivided Lands legislation (Bus. & Prof. Code, § 11000 et seq.).[2]

The record indicates that the development of these lots at Tahoe Donner engendered a great deal of public controversy. When Dart attempted to draw water for the subdivision from Donner Lake, the Attorney General's office filed suit and successfully enjoined this activity. In order to deal with the sewage from these lots and others, a new agency was established and new sewage treatment facilities were developed. As late as February of 1976, the Department of Real Estate issued a cease and desist order banning further sales of lots at Tahoe Donner until the adequacy of the sewage connections could be assured. This order remained in effect for 18 months.

In their complaint, plaintiffs alleged that Dart or its subsidiary, Dart Resorts, failed to plan and provide for adequate water supply, sewage treatment facilities, recreational facilities, and maintenance.[3] They prayed for compensatory and punitive damages, rescission, declaratory relief, and requested that a constructive trust be established to ensure that there was sufficient money to provide adequate facilities.

[1]An additional 85 property owners are prepared to join as named plaintiffs at the completion of this appeal, bringing their number to 242. Out of the original lots sold, 600 to 700 lots have reverted to Dart's ownership by foreclosure and other means.

[2]The defendants, who claim a right of indemnity, joined several agencies as cross-defendants. These cross-defendants include: Truckee Sanitary District, Truckee Donner Public Utility District, and the State Water Resources Control Board. It is unclear from the record whether the demurrers of these agencies were sustained or overruled and therefore, whether these agencies are still parties to the lawsuit.

[3]The plaintiffs' fifth amended complaint alleges violations of Business and Professions Code section 11025 (failure to provide adequate amenities and utilities as a basis for denial of a public report) and Business and Professions Code section 11010 (failure to make a truthful statement to the Real Estate Commissioner). Additionally, they allege common law fraud, negligent misrepresentation, failure of consideration, unjust enrichment, breach of trust, and seek declaratory relief and rescission.

Each individual who purchased a lot at Tahoe Donner was given a copy of the Final Subdivision Public Report. That report gave assurances that there would be an adequate water supply, sewage treatment and recreational facilities for the entire development. It is the alleged violation of these assurances upon which plaintiffs base their suit.

Plaintiffs filed a class certification motion under Code of Civil Procedure section 382 which authorizes class action suits.[4] They requested that the trial court grant them the right to represent all of the record owners of Tahoe Donner lots. A certification hearing was held on the 17th and 18th of November 1977.

Plaintiffs based their motion for class certification on the allegations of their complaint, their declarations, exhibits incorporated in the record, and points and authorities. The thrust of their argument was that a class action was proper since they had established an ascertainable class and a well-defined community of interest among the class members. (See *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].) The ascertainable class, they maintained, consisted of the record owners of lots at Tahoe Donner who had received the Final Subdivision Public Report and since each member of the class was affected by the failure of Dart to meet the needs of the subdivision, the requirement of a community of interest was also met.

In order to prove that they could adequately represent the entire class, the plaintiffs filed declarations by their attorneys as to the attorneys' experience with class action suits. Individuals who were personally aware of the attorneys' prior experience, also filed declarations.

The Tahoe Donner Association (TDA), interveners in this lawsuit, opposed the motion to certify the class. This association automatically includes in its membership any purchaser of a lot at Tahoe Donner. At the time TDA decided to intervene, Dart had a controlling interest in the association since a majority of the Tahoe Donner lots were still owned by Dart. Furthermore, Dart then had three representatives on the five-member board of directors of this association and the president of TDA was Mr. Sid Karsh, president of Dart Resorts.

---

[4]Code of Civil Procedure section 382 reads in pertinent part: "... and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

At the certification hearing, a "survey" conducted with Dart's assistance in the spring of 1976 was introduced to attempt to show that there was antagonism within the class to be represented. The "survey" consisted of a flyer entitled "Support Your Project!," which was sent to the property owners by Dart Resorts on the approval of its president, Mr. Karsh. The flyer was written by a homeowner, Mr. Jess Huffman, who subsequently reimbursed Dart Resorts for the cost of producing and mailing the pamphlet.

The flyer accused plaintiffs of damaging the Dart project by filing their lawsuit. It was claimed that the lawsuit was "more emotional than factual." There was no attempt to present the opposite viewpoint or even to list the factual allegations contained in the complaint that there had been problems with adequate water and sewage connections. The flyer boldly stated: "Dart has gone the distance, plus the extra mile, to meet their [sic] commitments to us, the property owners."

The pamphlet invited each property owner to return to Mr. Huffman the lower portion of the flyer after checking one of the boxes which indicated that (1) the owner felt that "Tahoe Donner is a fine project and Dart is meeting their [sic] commitments"; or (2) the owner was "not satisfied with Dart's efforts to meet their [sic] commitments"; or (3) the owner could be "counted on to contribute some funds towards the 'support Tahoe Donner' effort."

Of the 2,600 lot owners to whom it was mailed, only 325 responded. Testimony was adduced which indicated that 266 of those who responded checked the first alternative, 41 checked the second, and 18 simply returned the flyer unmarked. Some of the responses asked for more information and indicated they were unaware of the lawsuit. In comments appended to the returned flyers, some owners indicated support for the project but wished more information about the lawsuit and others endorsed Mr. Huffman's approach.[5]

The trial court denied class certification on July 11, 1978. The order of the court rested primarily on the results of the Huffman/Dart survey and the opposition of the Tahoe Donner Association to the suit. The court concluded that plaintiffs had not "carried the burden of proving

---

[5]Since the admissibility of this "survey" was not challenged, the court expresses no opinion about the manner in which the survey was conducted, the lack of any formal controls to test the reliability of the results, nor the relevance of the answers to the highly suggestive pamphlet.

the 'representative party has interests which are compatible with, and not antagonistic to those whom he (Richmond et al.) would represent.'"

This appeal followed.

## II.

"Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." (*Eisen* v. *Carlisle & Jacquelin* (2d Cir. 1968) 391 F.2d 555, 560.) Because of these important dual functions, courts and legislators have looked with increasing favor on the class action device. Dramatic developments in class action procedure have marked the last two decades, with the expansive amendments in 1966 of rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.)[6] and with the passage in 1970 of the Consumers Legal Remedies Act[7] in California. As a result of these and other changes, the class action, which began as a child of the equity courts with limited usefulness, has matured and expanded to meet the needs of modern society. (See *Developments—Class Actions* (1976) 89 Harv.L.Rev. 1318-1644; Yeazell, *From Group Litigation to Class Action, Part I: The Industrialization of Group Litigation* (1980) 27 UCLA L.Rev. 514, 515-516.)

---

[6] Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)* (1967) 81 Harv.L.Rev. 356, 375-400.

[7] In 1970, the California Legislature passed the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), including Civil Code section 1781, which states in relevant part:

"(a) Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.

"(b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:

"(1) It is impracticable to bring all members of the class before the court.

"(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

"(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.

"(4) The representative plaintiffs will fairly and adequately protect the interests of the class."

Although section 1781 is not directly applicable to the present action because of the definition of a consumer as an "individual who seeks or acquires ... goods or services ..." (Civ. Code, § 1761, subd. (d)), this court has suggested that section 1781 and rule

Code of Civil Procedure section 382 authorizes class action suits in California "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." ■ The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 704.) The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (See Civ. Code, § 1781, subds. (b)(2)-(4).)

■ A decision by a trial court denying certification to an entire class is an appealable order. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at pp. 698-699; see also *Morrissey* v. *City and County of San Francisco* (1977) 75 Cal.App.3d 903, 907 [142 Cal.Rptr. 527].) However, trial courts have been given great discretion with regard to class certification. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199-200 [112 Cal.Rptr. 144].) ■ For example, in the absence of other error, this court will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used (see *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750]); or (2) erroneous legal assumptions were made (*Fletcher* v. *Security Pacific National Bank* (1979) 23 Cal.3d 442, 446 [153 Cal.Rptr. 28, 591 P.2d 51]).

■ The party seeking class certification has the burden of proving the adequacy of its representation. (See, e.g., Civ. Code, § 1781, subd. (b)(4).) However, when the party opposing certification presents evidence that indicates widespread antagonism to the class suit, the adequacy of representation is called into question. "It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent. But only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. Moreover, if the court can utilize Rule 23(c)(4) to divide the class

23 may be used as procedural guidelines to ensure fairness in class action suits. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

into subclasses or to separate those issues that merit class action treatment so as to remove any antagonism, then the action need not be dismissed." (7 Wright & Miller, Federal Practice and Procedure (1972) Civil, § 1768, pp. 638-639, fns. omitted [hereinafter Wright & Miller].)

■ When the vast majority of a class perceives its interest as diametrically opposed to that of the named representatives, a trial court cannot equitably grant the named plaintiffs the right to pursue the litigation on behalf of the entire class. (See *Shulman* v. *Ritzenberg* (D.D.C. 1969) 47 F.R.D. 202; *Bailey* v. *Ryan Stevedoring Co., Inc.* (5th Cir. 1976) 528 F.2d 551, cert. den., 429 U.S. 1052 [50 L.Ed.2d 769, 97 S.Ct. 767].) The trial court can permit the plaintiffs to represent a smaller class if the minority can meet the requirements for class certification by showing an ascertainable class and a community of interest which is not coextensive with the larger class.

If the vast majority of the class do not oppose the suit, the minority may have its views presented either as a subclass or as interveners. (See 7 Wright & Miller, *supra*, at p. 639; *Developments—Class Actions, supra*, 89 Harv.L.Rev. at pp. 1490-1492.)

■ In this case, plaintiffs contend that the trial court erred when it held in effect that a showing of *any* antagonism within the group to be certified is sufficient to defeat a motion for certification. If the antagonism is insignificant, plaintiffs argue, it should not be sufficient to defeat class certification. Two Court of Appeal decisions of this state provide authority for this position.

In *Fanucchi* v. *Coberly-West Co.* (1957) 151 Cal.App.2d 72 [311 P.2d 33], the court held that even though one-third of the proposed class signed affidavits stating that they did not wish to be a part of the class, the class action suit could not be barred. "If [the opponents of the class] do not want to be paid they need not claim their share of any recovery which may result, but they may not thus defeat the right of the remaining growers to maintain a class action ...." (*Id.*, at p. 82.) Quite clearly, the *Fanucchi* court felt that class members who opposed the suit should not be able to defeat the right of the remaining members of the class to maintain a representative action.[8]

---

[8]Defendants ask us either to distinguish *Fanucchi* on the ground that that was an appeal from the sustaining of a special demurrer or to read it narrowly as merely saying that the affidavits by absent class members in that case only explicitly waived one claim and did not waive any other rights sought to be vindicated by the lawsuit. The

In *Hebbard* v. *Colgrove* (1972) 28 Cal.App.3d 1017 [105 Cal.Rptr. 172], the Court of Appeal cited *Fanucchi* with approval, holding that several antagonistic class members out of a total of 50 could not defeat class certification. Even though the dissident class members intervened on the defendants' side in the federal class suit that was a companion to *Hebbard* (*id.*, at p. 1029), the court held that their antagonism only went to their "desire to proceed or belief in the culpability of the defendants." Therefore, the interests of these class members could still be represented by the named plaintiffs "even though [the absent members] may ... forego their share of the recovery." (*Id.*, at p. 1030.)

Neither Dart nor the trial court addressed this state precedent. Instead, a federal case was cited to support the assertion that if there were any antagonism to a class action suit, this factor automatically signifies that there was not adequate representation by the named plaintiffs. The trial court relied on the two-pronged test for adequate representation outlined in *Shulman* v. *Ritzenberg, supra*, 47 F.R.D. 202. There, the court held that "(1) the representative party must be interested enough to be a forceful advocate and his chosen attorney must be qualified, experienced and generally able to conduct the litigation, and (2) the representative party must have interests which are compatible with and not antagonistic to those whom he would represent." (*Id.*, at p. 207.)

The trial court's reliance on the holding in *Shulman* is misplaced since that case involved only a six-member class excluding the antagonistic class members. Certification would not have fulfilled the basic purpose of class adjudication because joinder was possible. Contrary to the defendant's view, *Shulman* provides support for the plaintiffs' position that class status may be denied only if antagonism of such a substantial degree is shown that the purpose of class certification would be defeated if the motion were granted. (See also *Knuth* v. *Erie-Crawford Dairy Coop. Association* (3d Cir. 1968) 395 F.2d 420, 428.)

---

words of the opinion do not permit such a reading. The *Fanucchi* court expressly noted that while 175 had signed affidavits, that left over 350 who had not. As the quote in text makes clear, *Fanucchi* addressed the precise issue before this court and should not be distinguished merely because it was reviewed in a slightly different procedural posture.

Moreover, it is inappropriate to limit *Fanucchi* since the present case also fits within the language of waiver of explicitly mentioned claims. The fact that 266 members of the present class "Support Tahoe Donner" and think that Dart is "meeting its commitment" does not prove that they have waived their rights to adequate amenities or damages in the absence of adequate facilities.

The same conclusion was reached in *Bailey* v. *Ryan Stevedoring Co., Inc., supra*, 528 F.2d 551, in which a suit was brought on behalf of 232 local union members. Of this group, 204 of the members claimed that the plaintiffs did not represent their interests. The plaintiffs sought class certification in a suit to merge a union local made up of black members with a larger local made up of white members. Two hundred and four of the black members of the local objected to any merger because their power would have been diluted. (See also *Schy* v. *Susquehanna Corporation* (7th Cir. 1970) 419 F.2d 1112 [80 percent antagonism defeats class certification].)

The essential question presented by this case is whether antagonism per se by members of a class should automatically preclude the certification of a class. Since this state has a public policy which encourages the use of the class action device, rules promulgated by this court should reflect that policy. One scholarly commentary suggests that "[d]ifferences which do not raise questions as to the very legitimacy of the class action process, . . . but which merely reflect variances in view as to the proper outcome of a suit, do not provide reason for a court to refuse to hear a class suit." (*Developments—Class Actions, supra*, 89 Harv.L.Rev. at p. 1490.)

Further, "[m]ost differences in situation or interest among class members . . . should not bar class suit. If the factual circumstances underlying class members' claims differ, or if class members disagree as to the proper theory of liability, the trial judge, through use of techniques like subclassing or intervention, may incorporate the class differences into the litigative process, and give all class members their due in deciding what is the proper outcome of the litigation. Even if differences among class members are more fundamental, having to do with the type of relief which should be sought or indeed with whether the class opponent ought to be held liable at all, judicial accommodation appears to provide a sufficient mechanism for the protection of absentee interests. So long as a dispute concerns the outcome of litigation, the trial judge is in a position to isolate the differing positions, judge their validity in light of the substantive law governing the case, and shape the outcome of the suit to give the various class interests the weight to which the law entitles them." (*Id.*, at pp. 1490-1492 (fns. omitted).)

When a class contains various viewpoints, the courts may ensure that these viewpoints are represented by allowing them to join as interveners (as TDA did in this case) or as additional representatives of subclasses

within the full class. (Fed. Rules Civ. Proc., rule 23 (c)(4); 7 Wright & Miller, *supra*, at p. 639. See also *Rodriguez* v. *East Texas Motor Freight* (5th Cir. 1974) 505 F.2d 40, 51, revd. on other grounds, 431 U.S. 395 [52 L.Ed.2d 453, 97 S.Ct. 1891].) This would ensure that the trial court was fully aware of the differing views within the class. Additional protection is afforded to absent class members by the provisions which allow a class member to opt out of the class if he or she does not wish to be bound by the result of the suit. (Fed. Rules Civ. Proc., rule 23 (c)(2).)

Since the judicial system substantially benefits by the efficient use of its resources, class certifications should not be denied so long as the absent class members' rights are adequately protected. Additionally, there is great value in including the differing viewpoints, rather than precluding the class suit. Inclusion will have the secondary effect of giving the trier of fact more information which should ultimately result in a more informed decision.

In *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875, footnote 10 [97 Cal.Rptr. 849, 489 P.2d 1113], this court urged trial courts to define classes in such a manner as to "'permit utilization of the class action procedure.'" If this court were to adopt a rule that any antagonism (6 percent in this case) by class members to the lawsuit is sufficient to defeat class treatment, it would bar a large number of class suits. Furthermore, such a rule would encourage defendants to exploit this loophole by seeking out or attempting improperly to sow dissension within a class. (Cf. *La Sala* v. *American Sav. & Loan Assn.*, *supra*, 5 Cal.3d at p. 873; *Weeks* v. *Bareco Oil Co.* (7th Cir. 1941) 125 F.2d 84, 90.) Divergent viewpoints can be brought into the litigation when the trial court allows intervention and/or well-defined subclasses within the class.

This policy is in accord with the decisions of our Courts of Appeal in *Fanucchi* and *Hebbard*. Since the defendants did not establish in the trial court that there was either a conflict of interest[9] or overwhelming

---

[9]The trial court also based its decision on an alleged conflict of interest of Harold Berliner, lead attorney for plaintiffs. He allegedly participated in a lawsuit by another land development company seeking sewer connections which might otherwise have been allotted to the Tahoe Donner Subdivision. Defendants claim that this representation by Berliner, without the consent of plaintiffs herein, disqualifies him from representing the class even though he is no longer involved in the other case. The trial court found that there was a conflict at least at the initial stage of the current lawsuit. However, since

disapproval of the lawsuit within the class which would defeat the purpose of class adjudication, the trial court erred when it refused certification.

The results of the flyer questionnaire show no more than approximately 6 percent of the class of some 4,000 persons antagonistic to the class action suit. This small number should not be sufficient to defeat the motion for certification. Similarly, the intervention of an association which is largely under the control of Dart should not be sufficient evidence of antagonism to deny the certification. Any property owners whose interests differ from those of the named plaintiffs can be adequately protected by the interveners and the representatives of subclasses, if the trial court finds it appropriate to set up subclasses. A sizeable number of owners of Tahoe Donner lots have chosen to join as named plaintiffs in this suit. This large group should not be denied the opportunity to proceed as a class simply because 6 percent of the potential class members may be antagonistic to their lawsuit.[10]

■ Next, defendants claim that a prayer for rescission or punitive damages requires the trial court to deny class certification because the remedies prayed for create conflicting interests within the class. The defendants contend that since the property owners are dependent upon Dart for services and maintenance at Tahoe Donner, the relief prayed for creates a conflict between the named plaintiffs and the absent class members by threatening the subdivision's financial stability.

This issue appears to be one of first impression in this state. Although *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, involved prayers for damages and rescission in a class action context, that case is not dispositive of the issue here since no continuing relationship existed between the parties. In *Tober* v. *Charnita, Inc.* (M.D.Pa. 1973) 58 F.R.D. 74, the federal court faced a similar issue. That court's holding is instructive. "The named plaintiffs do not seek common relief for the

---

that alleged conflict of interest had already been resolved by the time of the certification motion, the plaintiffs may not be denied class status on that basis. (See *Sullivan* v. *Chase Inv. Services of Boston, Inc.* (N.D.Cal. 1978) 79 F.R.D. 246, 258 [permitting attorney to act as legal representative after withdrawal from potentially conflicting case].)

[10]It should also be noted that the trial court will be in a better position to assess the true feelings of the class after court-approved, objectively worded notice is sent to the entire class and the absent members are given an opportunity to elect nonparticipation in this lawsuit.

entire class but rather seek alternative relief in the form of an option to either rescind the transaction or retain possession of the land purchased and seek damages. The defendants have suggested the possibility that the interests of those class members who seek recision may become adverse to those who wish to retain possession of their land. It may be contended that wide-scale recision by a number of class members may have an adverse effect upon the value of the lands of those members who wish to retain possession.... While the court recognizes the potential for a conflict of interest between certain class members, we are not prepared to deny class action status at this time upon the prospect of a conflict which may or may not arise in the future. It may later become apparent that only a small number of the class may successfully seek recision. Recision is not a remedy which is automatically granted but must be sought within a reasonable time after discovery of the grounds upon which the remedy is sought. [Citation.] And too, any adverse interest may later be avoided by establishing sub-classes rather than by a denial of class action status. Under Rule 23(c) and (d) the court may modify, alter or amend its class action order at any time before a decision on the merits is reached. Included therein is the power to create sub-classes or terminate class action status at such time as it appears that an insolvable conflict of interest has arisen." (58 F.R.D. at p. 80, fn. omitted. See also *Frankel* v. *Wyllie and Thornhill, Inc.* (W.D.Va. 1972) 55 F.R.D. 330, 334.)

The defendants ask this court to reject the *Tober* rule and to follow *Young* v. *Trailwood Lakes, Inc.* (E.D.Ky. 1974) 61 F.R.D. 666. In *Young*, the plaintiff sought class certification in a controversy arising out of alleged misrepresentations in the sale of subdivision lots. The plaintiff charged a violation of the Consumer Credit Protection Act (15 U.S.C. § 1601 et seq.) and the Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1701 et seq.). The court found that the claims were not proper as class actions. The *Young* court went on to cite *Tober* but then ignored its holding by stating that "conceivably antagonistic goals" of rescission and damages "preclude effective administration as a class action." (*Id.*, at p. 667.)[11]

---

[11]Two other federal cases are cited with *Young—White* v. *Deltona Corporation* (S.D.Fla. 1975) 66 F.R.D. 560, 562-563, in which the court discusses this issue in dicta, and *Lukenas* v. *Bryce's Mountain Resort, Inc.* (W.D.Va. 1975) 66 F.R.D. 69, 71-72. In both cases, the courts examined the issue as if an actual, immediate conflict existed within the class. Without knowing how many plaintiffs would actually seek rescission, it is impossible to assess the seriousness of the threat to Dart's business. Thus, denial of class certification based merely on the prayer for relief appears to be premature.

The *Tober* rule is the more prudent rule to adopt since the trial court has continuing jurisdiction to decertify the class. If there is evidence presented at a later date of an actual conflict, the court may act. As noted in *Beckstead v. Superior Court* (1971) 21 Cal.App.3d 780, 784 [98 Cal.Rptr. 779], it is preferable to defer the decision to deny class certification until after notice has gone out and such future time as the trial court has the most complete information at its disposal.

To rule otherwise would invite the kind of speculation that went on in the trial court below. To illustrate "ambivalence" by a named plaintiff, the trial court relied on the deposition of a lot owner, Mr. Warren Estes, who testified that he would be most pleased if the project could go forward without the many problems which the lawsuit sought to remedy. This testimony was used as evidence that there was an inconsistency between the position of the named plaintiffs and their attorneys regarding rescission and punitive damages.

However, this assertion of inconsistency overlooks the obvious. There is no inconsistency between the filing of a lawsuit to remedy an alleged fraud and the hope that the subdivision will be completed in conformity with the original promises made by Dart. Both the named plaintiffs and the absent class members seek the benefit of the bargain they made with the defendants. Why else would the plaintiffs have asked for the imposition of a constructive trust on any profits from the development in order to ensure that adequate facilities were provided? Nevertheless, some plaintiffs may have suffered damage not capable of remedy under that trust, e.g., those owners who faced foreclosure after the Department of Real Estate's ban on the sale of lots. Since the seeking of common relief is no longer a prerequisite to a class suit (*Daar v. Yellow Cab Co., supra,* 67 Cal.2d at pp. 707-713), a prayer for relief that includes rescission and a request for punitive damages should not bar certification for a class suit.

■ Finally, the defendants contend that the plaintiffs failed to meet their burden of proof that the class is ascertainable and has a well-defined community of interests. (*Daar v. Yellow Cab Co., supra,* 67 Cal.2d at p. 704.) In *Vasquez,* this court noted that "[s]ubstantial benefits both to the litigants and to the court should be found before the imposition of a judgment binding on absent parties can be justified, and the determination of the question whether a class action is appropriate will depend upon whether the common questions are sufficiently perva-

sive to permit adjudication in a class action rather than in a multiplicity of suits." (4 Cal.3d at p. 810.)

Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question. (See, e.g., *Vasquez v. Superior Court, supra*, 4 Cal.3d at p. 810; *Occidental Land, Inc. v. Superior Court, supra*, 18 Cal.3d at pp. 361-362; *Petherbridge v. Altadena Fed. Sav. & Loan Assn., supra*, 37 Cal.App.3d 193.) The issue of ascertainability of the class is a relatively simple matter. In this case, the record owners of the lots at Tahoe Donner are easily identified and located. Joinder of all the potential plaintiffs would not be practicable in a case involving over 2,600 sales of lots.

■ As to whether there is a community of interest here, the court must find that predominant questions of law or fact are common to the class as a whole. (See Civ. Code, § 1781, subd. (b)(2).) Written misrepresentation claims provide an adequate basis for a finding of common questions within the class. (*Occidental Land, Inc. v. Superior Court, supra*, 18 Cal.3d at pp. 361-362.) The trial court below found that there were common questions of law and fact. The plaintiffs' claims were typical of those of the entire class. (See Civ. Code, § 1781, subd. (b)(3).)

The thrust of this suit is the inadequacy of the plans for necessities such as adequate water and sewage removal. If there is such a violation, it will affect every lot owner within the subdivision. The named plaintiffs may plead their additional individual claims or they may waive them. The absent class members have the option of dropping out of the lawsuit to protect their separate claims. Since individual claims of the class members are adequately protected, there is no reason to place an obstacle in the path of plaintiffs' suit.

■ The question that concerned the trial court was whether the plaintiffs had proved the element of adequate representation. In *Eisen v. Carlisle & Jacquelin, supra*, 391 F.2d at page 562, the federal court discussed the several factors involved in the resolution of such an issue. "To be sure, an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive

suit or that plaintiff has interests antagonistic to those of the remainder of the class."

There is no issue of collusion here since none was raised. Plaintiffs established that 242 lot owners seek to represent the class and that their attorneys have substantial experience in class action litigation. Since the plaintiffs need not show that "every member of the class [is] enthusiastic about the maintenance of the lawsuit" (*Shulman* v. *Ritzenberg, supra*, 47 F.R.D. at p. 207 (fn. omitted)), they have met their burden in this regard. Further, no present and substantial conflict between the interests of the absent class members and the named plaintiffs was shown.

Since plaintiffs have met the legal tests set forth for class certification, it was error for the trial court to deny their motion to certify based on antagonism within the class.

### III.

A motion for certification of a class should not be denied by a trial court because some members of the potential class are antagonistic to the lawsuit. To permit a dissident group within the class to preclude maintenance of a representative suit would unnecessarily interfere with the rights of the class members to use this equitable procedure. The dissident's views may be asserted within the lawsuit by way of intervention or subclassing. To rule otherwise would eliminate a substantial number of class action suits in this state.

The trial court in this case refused to certify this ascertainable class of property owners at Tahoe Donner because it believed that the plaintiff's motion had to be denied if the defendant showed *any* antagonism between the members of the class and the named plaintiffs. This was an error of law. Consequently, the order denying certification is reversed.

Tobriner, J., Mosk, J., Richardson, J., Newman, J., Rattigan, J.,* and Hanson (P. D.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.