52 Cal.Rptr.3d 244 (2006)
145 Cal.App.4th 1243
Ron KONIG, Plaintiff and Appellant,
v.
U-HAUL COMPANY OF CALIFORNIA, Defendant and Respondent.
No. B190547.
Court of Appeal of California, Second District, Division Five.
December 19, 2006.
*246 Law Office of Joseph Antonelli, Joseph Antonelli and Janelle Carney, West Covina, for Plaintiff and Appellant.
Fulbright & Jaworski, James R. Evans, Jr., and Joseph H. Park, Los Angeles; and Mariscal, Weeks, McIntyre & Friedlander, and Gary L. Birnbaum for Defendant and Respondent.
TURNER, P.J.

I. INTRODUCTION
This appeal raises the issue of whether a class action waiver contained in a employment agreement between plaintiff, Ron Konig, and his former employer defendant, U-Haul Company of California, is enforceable under standards set forth in Discover Bank v. Superior Court (2005) 36 Cal.4th 148, 156-174, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Plaintiff has failed to prove this action involves "predictably ... small amount of damages" per class member as is his burden under Discover Bank. We affirm the order granting defendant's motion to compel arbitration and dismissing plaintiffs class action claims.

II. BACKGROUND
On June 15, 2005, plaintiff filed a proposed class action for unpaid wages and unfair business practices against his former employer. The complaint, which contained five causes of action, alleged various violations of the Labor Code and the Business and Professions Code. The complaint alleged, among other things, defendant failed to pay its employees overtime and accrued vacation. With respect to the overtime pay, paragraph 23 of the complaint alleged: "[Defendant had a] uniform corporate policy and practice of allocating and authorizing servicing of clientele and improperly classifying that service as sales by defendant U-Haul. This corporate policy and pattern of conduct was/is accomplished with the advance knowledge and designed intent to place all service oriented duties and tasks and classify those duties as sales so as to call these members of the class, outside sales persons and classify them as exempt employees. Each and every one of the members of the class named herein who were customarily and regularly required to discharge their duties in the course and in excess of, forty hours in a week and/or eight hours in a day without the appropriate compensation." Defendant is further alleged to have falsely disseminated information among its employees that the employees were not entitled to overtime compensation under California law and defendant's policies. The complaint further alleged that the defendant did not allow its employees to take meal and rest breaks. Plaintiff sought damages on behalf of himself and defendant's similarly situated current and former employees. Plaintiff explicitly alleged his claims were typical of all other class members. At oral argument, plaintiff conceded his causes of action would be cognizable as general jurisdiction claims. That is, his own personal *247 damage claim exceeds $25,000. (Code Civ. Proc. § 86, subd. (a)(1).)
On November 7, 2005, defendant moved to compel arbitration, to stay the action, and for dismissal of the class action claims. Defendant argued that the claims raised in the lawsuit are exclusively subject to final and binding arbitration by defendant's arbitration policy, which was acknowledged and signed by plaintiff. The arbitration policy is as follows: "The [U-Haul Arbitration Policy] applies to all ... employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with [defendant] or the termination of that employment. Examples of the types of disputes or claims covered by the [U-Haul Arbitration Policy] include, but are not limited to, claims for wrongful termination of employment, breach of contract, fraud, employment discrimination, harassment or retaliation under the Americans With Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and its amendments, the California Fair Employment and Housing Act or any other state or local anti-discrimination laws, tort claims, wage or overtime claims or other claims under the Labor Code, or any other legal or equitable claims and causes of action recognized by local, state or federal law or regulations.... [¶] Your decision to accept employment or continue employment with [defendant] constitutes your agreement to be bound by the [U-Haul Arbitration Policy]. Likewise, [defendant] agrees to be bound by the [U-Haul Arbitration Policy]. This mutual obligation to arbitrate means that both you and [defendant] are bound to use the [U-Haul Arbitration Policy] as the only means of resolving any employment related disputes. This mutual obligation to arbitrate claims also means that both you and [defendant] forego any right either may have to a jury trial on claims relating in any way to your employment, and both you and [defendant] forego and waive any right to join or consolidate claims in arbitration with others or to make claims in arbitration as a representative or as a member of a class or in a private attorney general capacity, unless such procedures are agreed to by both you and [defendant]. No remedies that otherwise would be available to you individually or to [defendant] in a court of law, however, will be forfeited by virtue of this agreement to use and be bound by the [U-Haul Arbitration Policy]. The [U-Haul Arbitration Policy] changes the forum and process for resolving disputes, but does not change the potential legal remedies you have. [¶] The [U-Haul Arbitration Policy] shall be governed by the Federal Arbitration Act (`FAA'), 9 U.S.C. § 1 et seq. If for any reason, the FAA is deemed inapplicable, only then will the [U-Haul Arbitration Policy] be governed by the applicable state arbitration statutes. The National Rules for the Resolution of Employment Disputes of the American Arbitration Association (`AAA') in place at the time of the dispute will govern the procedures to be used in arbitration, unless you and [defendant] agree otherwise in writing."
The employee arbitration agreement was to be executed and acknowledged by each employee. The employee arbitration agreement provided in part: "I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against [defendant] ... and that, by agreeing to use arbitration to resolve my dispute, both [defendant] and I agree to forego any right we each may have had to a jury trial on issues covered by the [U-Haul Arbitration Policy], and forego any right to bring claims on a representative, class member basis, or as a private attorney general."
*248 In support of the motion to compel, defendant argued that the arbitration agreement was enforceable under the United States Arbitration Act (9 U.S.C. § 1 et seq.) or alternatively under the California Arbitration Act. (Code Civ. Proc., § 1280 et seq.) In support of the arbitration motion, defendant presented evidence that plaintiff was hired as a general manager in April 1986 and was subsequently promoted to the position of Area Field Manager. Defendant asserted that plaintiff had "accepted the written terms" [of the U-Haul Arbitration Policy] as a "condition of his employment" in July 2003. Defendant terminated plaintiff in July 2004. Plaintiff then filed a complaint with the Department of Fair Employment and Housing in which he alleged that he was terminated for complaining about harassment and unprofessional behavior in violation of the California Fair Employment and Housing Act.
Plaintiff opposed the motion to compel arbitration on the grounds: he never executed the arbitration agreement; his alleged signature on the July 2003 document was a forgery; the standard arbitration agreement drafted by defendant is procedurally unconscionable; and the arbitration agreement is substantively unconscionable in that it prohibits class actions, lacks mutuality, and requires employees to pay fees. Plaintiff also argued that the case was controlled by Discover Bank v. Superior Court, supra, 36 Cal.4th at pages 156-174, 30 Cal.Eptr.3d 76, 113 P.3d 1100, which concluded the United States Arbitration Act did not preempt a finding that the arbitration provision is unconscionable.
In reply, defendant argued plaintiffs claims regarding his signature lacked merit. Defendant contended that, even if plaintiff did not sign the arbitration agreement, he consented to its terms by electing to accept the benefits of employment, with knowledge that it was a condition of his continued employment. Defendant further argued: California law does not favor class actions; Discover Bank did not resolve issues related to employment agreements; the arbitration agreement is not substantively unconscionable because it satisfies the requirements of Armendariz v. Foundation Health Psychcare Services (2000) 24 Cal.4th 83, 103-113, 99 Cal.Rptr.2d 745, 6 P.3d 669; the arbitration agreement is mutual; and arbitration agreements are favored in California.
At the initial hearing, the trial court requested supplemental briefing on class action waivers in the employment context. In the interim, on January 19, 2006, we decided Gentry v. Superior Court (2006) 135 Cal.App.4th 944, 37 Cal.Rptr.3d 790, review granted April 26, 2006, S141502. As noted, the Supreme Court granted review of Gentry on April 26, 2006. Earlier though, on March 24, 2006, the trial court ruled that the arbitration agreement was enforceable under federal law. Citing Gentry, the trial court ruled that a class action waiver in and of itself did not render the arbitration agreement or unconscionable. The trial court found that plaintiff had failed to establish the infirmities that led to Discover Bank's conclusion that the consumer contract waiver was substantively unconscionable. Specifically, the trial court ruled plaintiff did not prove that there were predictably amounts of damages plus a negative impact on his ability to pursue his statutory claims such that the arbitration agreement was substantively unconscionable.
On April 14, 2006, plaintiff filed an appeal from the order compelling arbitration and dismissing his putative class claims. The appeal from the order compelling arbitration of plaintiffs individual claims is not appealable. (Code Civ. Proa, §§ 904.1, 1294; Szetela v. Discover Bank *249 (2002) 97 Cal.App.4th 1094, 1097-1098, 118 Cal.Rptr.2d 862.) But as to the class certification issue, we have jurisdiction to resolve that question. (See Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 462, 470, 174 Cal.Rptr. 515, 629 P.2d 23; Szetela v. Discover Bank, supra, 97 Cal.App.4th at p. 1098,118 Cal.Rptr.2d 862.)

III. DISCUSSION
The arbitration agreement provides that it is governed by the United States Arbitration Act. (9 U.S.C. § 1 et seq.) The purpose and effect of the federal law is to encourage the arbitration of civil disputes outside the judicial forum. (9 U.S.C. § 1; Gilmer v. Interstate/Johnson Lane Corporation (1991) 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26; Moses H. Cone Memorial Hospital v. Mercury Const. Corp. (1983) 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765.) There is a liberal policy in favor of valid arbitration agreements under federal and state law. (Gilmer v. Interstate/Johnson Lane Corporation, supra, 500 U.S. at p. 25, 111 S.Ct. 1647; Code Civ. Proc, § 1281.2; Armendariz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th at p. 97, 99 Cal.Rptr.2d 745, 6 P.3d 669; Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9, 10 Cal.Rptr.2d 183, 832 P.2d 899.) The United States Supreme Court has held that under federal law any doubts as to the scope of arbitral issues should be resolved in favor of arbitration, including questions concerning contractual interpretation, waiver, delay, or similar defenses. (Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth (1985) 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444; accord, Cronus Investments, Inc. v. Concierge Services (2005) 35 Cal.4th 376, 384, 25 Cal. Rptr.3d 540,107 P.3d 217.)
Under federal law, an arbitration provision "shall be valid, irrevocable, and enforceable" unless there is a ground for revocation of the agreement to arbitrate such as the defense of unconscionability. (9 U.S.C. § 2; Perry v. Thomas (1987) 482 U.S. 483, 492-93, fn. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426; Armendariz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th at p. 98, 99 Cal.Rptr.2d 745, 6 P.3d 669.) State unconscionability law may be applied to determine the validity of an arbitration agreement. But for the application of state law unconscionability to avoid the limited preemptive effect of the United States Arbitration Act, it must apply to all contracts, not merely arbitration clauses. (Doctor's Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 686-687, 116 S.Ct. 1652, 134 L.Ed.2d 902; Ting v. AT & T (9th Cir.2003) 319 F.3d 1126, 1150 fn. 15; see also Discover Bank v. Superior Court, supra, 36 Cal.4th at pp. 153, 163-168, 30 Cal.Rptr.3d 76, 113 P.3d 1100; Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 971-973, 64 Cal.Rptr.2d 843, 938 P.2d 903; Kinney v. United Health-Care Services, Inc. (1999) 70 Cal.App.4th 1322, 1328, 83 Cal.Rptr.2d 348.) Our Supreme Court has held that a determination of enforceability of a class action waiver based on unconscionability principles is not preempted by the United States Arbitration Act. (Discover Bank v. Superior Court, supra, 36 Cal.4th at pp. 153, 163-168, 30 Cal.Rptr.3d 76, 113 P.3d 1100; Klussman v. Cross Country Bank (2005) 134 Cal.App.4th 1283, 1290, 36 Cal.Rptr.3d 728; see also Ting v. AT & T (9th Cir. 2003) 319 F.3d 1126, 1135, 1147; contra Boomer v. AT&T (7th Cir.2002) 309 F.3d 404, 419-420.) If there is no dispute in the evidence, we review the arbitration agreement de novo to determine if it is unconscionable. (Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court (2005) 133 Cal.App.4th 396, 405, 34 Cal. Rptr.3d 659; Balandran v. Labor Ready, Inc. (2004) 124 Cal.App.4th 1522, 1527, 22 *250 Cal.Rptr.3d 441; McManus v. CIBC World Markets Corp. (2003) 109 Cal. App.4th 76, 86, 134 Cal.Rptr.2d 446; Mercuro v. Superior Court (2002) 96 Cal. App.4th 167, 174, 116 Cal.Rptr.2d 671.)
Unconscionability has both a procedural and a substantive element. (Discover Bank v. Superior Court, supra, 36 Cal.4th at p. 160, 30 Cal.Rptr.3d 76, 113 P.3d 1100; Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1071, 130 Cal. Rptr.2d 892, 63 P.3d 979; Armendariz v. Foundation Health Psychcare Services, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669; Kinney v. United Healthcare Services, supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348; Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1530-1533, 60 Cal.Rptr.2d 138.) In order to invalidate a contractual provision because it is unconscionable, generally both procedural and substantive unconscionability must be present. (Armendariz v. Foundation Health Psychcare Services, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669; Klussman v. Cross Country Bank, supra, 134 Cal.App.4th at p. 1295, 36 Cal.Rptr.3d 728.) However, there need not be equal degrees of both procedural and substantive unconscionability present. Our Supreme Court has adopted a sliding scale analysis. The greater the showing a contract term is procedurally unconscionable, the less evidence need be presented of substantive unconscionability and vice versa. (Armendariz v. Foundation Health Psychcare Services, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669; Morris v. Redwood Empire Bancorp (2005) 128 Cal.App.4th 1305, 1317, 27 Cal.Rptr.3d 797.) The burden rests with plaintiff to prove that the class action waiver is both procedurally and substantively unconscionable. (Engalla v. Permanente Medical Group, Inc., supra, 15 Cal.4th at p. 972, 982, 64 Cal.Rptr.2d 843, 938 P.2d 903; Crippen v. Central Valley RV Outlet, Inc. (2004) 124 Cal. App.4th 1159, 1164, 22 Cal.Rptr.3d 189.)
Procedural unconscionability occurs when there is "oppression" arising from an inequality of bargaining power or "surprise" from buried terms in a complex printed form. (Armendariz v. Foundation Health Psychcare Services, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669; Mercuro v. Superior Court, supra, 96 Cal.App.4th at p. 174, 116 Cal. Rptr.2d 671.) A preemployment arbitration agreement can be a contract that is procedurally unconscionable. (Little v. Auto Stiegler, Inc. 29 Cal.4th at p. 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979; Armendariz v. Foundation Health Psychcare Services, supra, 24 Cal.4th at pp. 113-127, 99 Cal.Rptr.2d 745, 6 P.3d 669.) In this case, the class action waiver is contained in an arbitration agreement imposed as a condition of employment. As a condition of employment, an employee is required to waive any right to pursue a class action. Because it is a condition of employment, there is no opt out provision and no real provision to negotiate its terms. (See Aral v. EarthLink, Inc. (2005) 134 Cal.App.4th 544, 557, 36 Cal.Rptr.3d 229 [no opportunity to opt out "is quintessential procedural unconscionability"]; Szetela v. Discover Bank, supra, 97 Cal.App.4th at p. 1100, 118 Cal.Rptr.2d 862 [when weaker party is told to take it or leave it without a meaningful opportunity negotiation, procedural unconscionability is present.].) Defendant's arbitration clause is imposed as a condition of employment and is thus procedurally unconscionable.
As to the second aspect of unconscionability law, the substantive element addresses the existence of overly-harsh or one-sided terms. (Discover Bank v. Superior Court, supra, 36 Cal.4th at p. 160, 30 Cal.Rptr.3d 76, 113 P.3d 1100; Armendariz *251 v. Foundation Health Psychcare Services, supra, 24 Cal.4th at p. 114, 99 Cal. Rptr.2d 745, 6 P.3d 669.) In Little v. Auto Stiegler, Inc., supra, 29 Cal.4th at pages 1071-1072, 130 Cal.Rptr.2d 892, 63 P.3d 979, the Supreme Court explained, "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." (See Jaramillo v. JH Real Estate Partners, Inc. (2003) 111 Cal.App.4th 394, 401, 3 Cal. Rptr.3d 525.)
In Discover Bank v. Superior Court, supra, 36 Cal.4th at pages 160-161, 30 Cal.Rptr.3d 76, 113 P.3d 1100, the Supreme Court explained how a class action waiver in a consumer agreement may be substantively unconscionable: "We agree that at least some class action waivers in consumer contracts are unconscionable under California law. First, when a consumer is given an amendment to its cardholder agreement in the form of a `bill stuffer' that he would be deemed to accept if he did not close his account, an element of procedural unconscionability is present. (Szetela, supra, 97 Cal.App.4th at p. 1100, 118 Cal.Rptr.2d 862.) Moreover, although adhesive contracts are generally enforced (Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 817-818, 171 Cal.Rptr. 604, 623 P.2d 165), class action waivers found in such contracts may also be substantively unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy. As stated in Civil Code section 1668: `All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.' (Italics added.) [¶] Class action and arbitration waivers are not, in the abstract, exculpatory clauses. But because, as discussed above, damages in consumer cases are often small and because `"[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit'" (Linder [v. Thrifty Oil Co. (2000) 23 Cal.4th 429,] 446, 97 Cal.Rptr.2d 179, 2 P.3d 27), "`the class action is often the only effective way to halt and redress such exploitation.'" (Ibid.) Moreover, such class action or arbitration waivers are indisputably one-sided. `Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover [Bank], because credit card companies typically do not sue their customers in class action lawsuits.' (Szetela, supra, 97 Cal. App.4th at p. 1101, 118 Cal.Rptr.2d 862.) Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable."
In Discover Bank, the Supreme Court identified the circumstances where a consumer agreement can be substantively unconscionable: "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party `from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ.Code, § 1668.) Under these circumstances, such waivers are unconscionable under California *252 law and should not be enforced.'" (Discover Bank v. Superior Court, supra, 36 Cal.4th at pp. 162-163, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) Plaintiff asserts the foregoing Discover Bank test for unconscionability of a class action waiver in an arbitration clause applies to this case. Defendant is correct that this case does not involve a consumer contract as was the case in Discover Bank. But the aforementioned unconscionability provisions, which find their statutory basis in Civil Code section 1670.5, apply to all contracts including arbitration clauses in employment and other agreements. (McManus v. CIBC World Markets Corp., supra, 109 Cal.App.4th at pp. 86-92, 134 Cal.Rptr.2d 446; Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1328, 83 Cal.Rptr.2d 348.) We need not decide the exact applicability of the Discover Bank test to this case. Nonetheless, we assume for purposes of argument that as plaintiff contends the Discover Bank "predictably ... small amounts of damages" element applies to an unconscionability claim arising in the employment context.
Here, plaintiff failed to establish "predictably ... small amounts" of damages payable to class members are at issue as required under the Discover Bank test. Thus, plaintiff failed to sustain his burden of proving substantive unconscionability. The complaint in this case alleges defendant has engaged in a scheme to defraud its employees out of overtime compensation. Plaintiff presented no evidence in the trial court the potential damages and penalties payable to class members would be "predictably ... small." Thus, plaintiff failed to establish that the class action waiver was substantively unconscionable under the Discover Bank test. In the absence of any evidence the potential damages payable to class members would be predictably small, the trial court reasonably could have found plaintiff failed to sustain his burden of proving the class action waiver was procedurally unconscionable. As noted, plaintiffs causes of action, which are typical of the other class members, are general jurisdiction claims.
For the first time on appeal, plaintiff cites to statistical data set forth in the United States Department of Labor website in an effort to prove small amounts of damages and penalties are at issue. Plaintiff refers to statistical data which indicates that the Wage and Hour Division of the labor department collected $212,537,544 in back wages for employees in fiscal year 2003. These back wages were collected for 342,358 employees. According to plaintiff, this averages a back wage award of $620.80 per aggrieved employee. Thus, plaintiff reasons the average recovery of $620.80 meets the predictably small test for substantive unconscionability adopted in Discover Bank. However, this evidence was never presented to the trial court. Hence, as defendant correctly notes, the United States Department of Labor statistics may not be relied upon for the first time on appeal. (Crippen v. Central Valley RV Outlet, Inc., supra, 124 Cal.App.4th at p. 1167, fn. 1, 22 Cal.Rptr.3d 189; Resolution Trust Corp. v. Winslow (1992) 9 Cal. App.4th 1799, 1810, 12 Cal.Rptr.2d 510.)
Moreover, there is no apparent correlation between the cited federal back wage figures and the allegations in plaintiffs complaint. For example, plaintiffs first cause of action alleges: he was regularly denied meal and rest breaks; this was pursuant to a "consistent and uniform policy"; and, as a result, he is entitled to unpaid compensation, penalties, and attorney fees. Plaintiff seeks Labor Code section *253 558 penalties [1] which consist of $50 for the first violation and $100 for each subsequent failure to pay legally required compensation. If defendant in fact has a uniform policy of denying meal and rest breaks, in one month alone, the penalties payable to plaintiff would exceed $1,000. In plaintiffs Business and Professions Code section 17200 cause of action, he is seeking compensation and penalties for the four years preceding June 15, 2005, the filing date of the complaint. Plaintiffs complaint alleges his claims are typical of those of other class members. Multiplied over months and years, the claims of plaintiff and other class members according to the complaint do not involve "predictably ... small amounts of damages" within the meaning of Discover Bank. Hence, the Department of Labor statistics relied upon by plaintiff for the first time on appeal have no relationship to the extensive damage and penalty awards he and other potential class members are seeking.

IV. DISPOSITION
The order compelling arbitration is affirmed. Defendant, U-Haul Company of California is entitled to its costs on appeal from plaintiff, Ron Konig.
I concur: KRIEGLER, J.
MOSK, Dissenting.
I dissent.
There is no meaningful distinction between the nature and effect of class action waivers by consumers and of class action waivers by employees who, as the plaintiff employee here, do not have negotiated employment contracts.
"As a general proposition, class actions are favored in California." (Howard Gunty Profit Sharing Plan v. Superior Court (2001) 88 Cal.App.4th 572, 578, 105 Cal. Rptr.2d 896.) The California Supreme Court stated, "`Modern society seems increasingly to expose men to ... group injuries for which individually they are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive. If each is left to assert his rights alone if and when he can, there will at best be a random and fragmentary enforcement, if there is any at all. This result is not only unfortunate in the particular case, but it will operate seriously to impair the deterrent effect of the sanctions which underlie much contemporary law. The problem of fashioning an effective and inclusive group remedy is thus a major one.' (Kalven and Rosenfield, Function of *254 Class Suit (1941) 8 U.Chi.L.Rev. 684, 686.)" (Vasquez v. Superior Court (1971) 4 Cal.3d 800, 807, 94 Cal.Rptr. 796, 484 P.2d 964.)
In Discover Bank v. Superior Court (2005) 36 Cal.4th 148, 162-163, 30 Cal. Rptr.3d 76, 113 P.3d 1100, the California Supreme Court again recognized the strong policy favoring the class action procedure, holding that "when the [class action] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party `from responsibility for [its] own fraud, or willful injury to the person or property of another.' [Citation.] Under these circumstances, such waivers are unconscionable under California law and should not be enforced."
These same considerations are applicable to class actions by employees, as persuasively articulated by the court in Skirchak v. Dynamics Research Corporation, Inc. (D.Mass.2006) 432 F.Supp.2d 175. "An arbitration agreement that eliminates the right to a class-wide proceeding may have `the "substantial" effect of contravening the principle behind class action policies and "chilling the effective protection of interests common to a group[.]"'" (Id. at p. 181, quoting Ingle v. Circuit City Stores, Inc. (9th Cir.2003) 328 F.3d 1165, 1176, fn. 13.) "Requiring employees prospectively to waive their statutory rights to sue in order to obtain or maintain their employment is utterly inconsistent with the [Fair Labor Standards Act's] purpose of protecting the class of employees that possesses the least bargaining power in the workforce: `the unprotected, unorganized and lowest paid of the nation's working population.' [Citation.] In this case, the imposition of a waiver of class actions may effectively prevent [employees] from seeking redress of FLSA violations. The class action provision thereby circumscribes the legal options of these employees, who may be unable to incur the expense of individually pursuing their claims. In this respect, the class action waiver is not only unfair to [employees], but also removes any incentive for [employers] to avoid the type of conduct that might lead to class action litigation in the first instance. The class action clause is therefore "substantively unconscionable." (Ibid.)
The plaintiff employee here alleged that he and other similarly-situated employees were covered by the Labor Code and California Industrial Welfare Commission orders, and asserted a claim for damages for various Labor Code violations, including damages and penalties for overtime compensation, waiting time, and failures to provide required rest breaks. He further alleged that the members of the proposed class have "relatively small claims." The damages for the members of the class that have been employed for short periods of time would be especially small.
The California Supreme Court said that in determining whether a class should be certified, the amount of the damages or "impracticality of bringing an individual action for comparatively small potential recovery [is] a consideration in favor of permitting a class action.... [T]he amount prayed for ... does not per se render a class action inappropriate." (Collins v. Rocha (1972) 7 Cal.3d 232, 238, 102 Cal. Rptr. 1, 497 P.2d 225.) "The ultimate question ... is whether, given an ascertainable class, the issues which may be *255 jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (Ibid.; see Bell v. Farmers Ins. Exchange (2004) 115 Cal.App.4th 715, 744-745, 9 Cal.Rptr.3d 544 (Bell) [average claim of $37,394 did not preclude class certification].) "Moreover, class actions may be needed to assure the effective enforcement of statutory policies even though some claims are large enough to provide an incentive for individual action. While employees may succeed under favorable circumstances in recovering unpaid overtime through a lawsuit or a wage claim filed with the Labor Commissioner, a class action may still be justified if these alternatives offer no more than the prospect of `random and fragmentary enforcement' of the employer's legal obligation to pay overtime. (Vasquez v. Superior Court, supra, 4 Cal.3d 800, 807, 94 Cal.Rptr. 796, 484 P.2d 964.)" (Bell, supra, 115 Cal.App.4th at p. 745, 9 Cal.Rptr.3d 544.) These considerations for class certification are also relevant to the question of unconscionability. They can provide a better standard for determining unconscionability than just the amount of potential damages.
Although the damage amounts in employment cases may not be as small as the damage amounts in some consumer class actions, generally the amounts are still relatively small.[1] As a result, the employee in a case such as this one is at a severe disadvantage vis-à-vis the employer in connection with pursuing a claim against the employer.
The court in Bell, supra, 115 Cal. App.4th 715, 9 Cal.Rptr.3d 544, described some of the hurdles faced by employees in connection with overtime claims: "[The employer] maintains that where claims are as large as $37,000, the right to recover attorney fees, costs, and interest provides `ample incentive' for an individual lawsuit. But the size of the average claim in part reflects the accrual of unpaid overtime over the five-year duration of this lawsuit prior to trial. When the complaint was first filed in October 1996, the average claim would have been smaller and a large portion of the claims may not have been reasonably adequate to fund the expense of individual litigation. The length of this litigation in fact underscores the practical difficulties vindicating claims to unpaid overtime. Employees will seldom have detailed personal records of hours worked. Their case ordinarily rests on the credibility of vague recollections and requires them to litigate complex overtime formulas and exemption standards. For current employees, a lawsuit means challenging an employer in a context that may be perceived as jeopardizing job security and prospects for promotion. If the employee files after termination of employment, the costs of litigation may still involve travel expenses and time off from work to pursue the case, and the value of any ultimate recovery may be reduced by legal expenses." (Id. at p. 745, 9 Cal.Rptr.3d 544.)
For employees to assert their rights through individual claims, the remedy available to each individual employee would have to be sufficient to attract adequate legal representation. Many employees would have difficulty obtaining such representation. For example, short-term employees would certainly have such difficulties. Faced with such obstacles, many employees would not be able, as a practical matter, to commence a proceeding against *256 their employer. As in a consumer case, a class action waiver would effectively immunize the employer from at least some of the civil consequences for its wrongful activity. Thus, the rationale for holding class action waivers in consumer contracts unconscionable also applies to the employee contracts involved here.
The California Supreme Court has indicated its solicitude for employees subject to arbitration clauses by applying the doctrine of unconscionability to protect employee rights. (See Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 118, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Moreover, the California Supreme Court has invalidated pre-dispute waivers of certain procedural rights in the absence of express statutory authorization for such waivers. (See Grafton Partners v. Superior Court (2005) 36 Cal.4th 944, 32 Cal.Rptr.3d 5, 116 P.3d 479 [invalidated pre-dispute jury waivers].) There is no legislative authorization for pre-dispute waivers of statutorily created class action procedures. (Code Civ. Proa, § 382.) These principles, although not directly applicable, should be considered as factors in determining unconscionability in this case.
If the waiver of class actions in employment cases such as this one is validated, such waivers likely will be included in all employment manuals and policies applicable to employees. Employee class actions would become rare. As a result, employees and the courts would be deprived of the beneficial effects of class actions for employee-employer disputes. Accordingly, I would reverse the judgment.
NOTES
[1] Labor Code section 558 states: "(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: [H] (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages, [¶] (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. [¶] (3) Wages recovered pursuant to this section shall be paid to the affected employee, [11] (b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, or any provision regulating hours and days of work in any order of the Industrial Welfare Commission, the Labor Commissioner may issue a citation. The procedures for issuing, contesting, and enforcing judgments for citations or civil penalties issued by the Labor Commissioner for a violation of this chapter shall be the same as those set out in Section 1197.1.[¶] (c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."
[1] A California "small claims" court has jurisdiction over claims by natural persons of up to $7,500 (Code Civ. Proc, § 116.221.) "Limited civil cases" are those in which the demand, exclusive of interest, is for $25,000 or less. (Code Civ. Proc, § 86, subd. (a)(1).)