Filed 12/30/13  Johnson v. California Pizza Kitchen CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DAVID JOHNSON et al., | B234542 consolidated w/B234670 |
| Plaintiffs and Appellants, | (Los Angeles County |
| v. | Super. Ct. Nos. BC373758, BC389448 & BC441231) |
| CALIFORNIA PIZZA KITCHEN, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Initiative Legal Group, Capstone Law, Glenn A. Danas, Robert K. Friedl; Rastegar & Matern, Matthew J. Matern and S. Emi Ikeda Minne for Plaintiffs and Appellants.

Jones Day, Rick Bergstrom and Cindi Ritchey for Defendant and Respondent.

_____

Plaintiffs and appellants David Johnson (Johnson), Jacob Hernandez (Hernandez), Jose Martinez (Martinez) and Jaime Lopez (Lopez) (collectively, plaintiffs), who were non-exempt employees of defendant and respondent California Pizza Kitchen, Inc. (CPK), appeal an order denying their motion for class certification.[1]  As relevant to this appeal, plaintiffs sought to certify four subclasses of current and former employees of, asserting CPK violated California law with respect to (1) off-the-clock work; (2) meal breaks; (3) rest breaks; and (4) wage statements.

The essential issue presented is whether the trial court abused its discretion in denying class certification.

The record supports the trial court's determination that common issues of fact and law do not predominate.  Therefore, the trial court properly exercised its discretion in denying class certification.  The order is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Employer's obligations with respect to meal and rest periods for nonexempt employees.*

By way of background, state law "obligates employers to afford their nonexempt employees meal periods and rest periods during the workday. (See Lab. Code, §§ 226.7, 512; [Industrial Welfare Commission (IWC)] wage order No. 5–2001 (Cal. Code Regs., tit. 8, § 11050), hereafter Wage Order No. 5.) [[2]]  Labor Code section 226.7, subdivision (a) [[3]] prohibits an employer from requiring an employee 'to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.'  In turn, Wage Order

---

[1]     An order denying a motion for class certification is appealable. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.)
[2]     The IWC issues wage orders on an industry-by-industry basis.  Wage Order No. 5 governs restaurant employees, among others.  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1018, fn. 1 (*Brinker*).)
[3]     All further statutory references are to the Labor Code, unless otherwise specified.

2

No. 5, subdivision 12 prescribes rest periods, while subdivision 11, as well as section 512 of the Labor Code, prescribes meal periods. Employers who violate these requirements must pay premium wages. (§ 226.7, subd. (b); Wage Order No. 5, subds. 11(B), 12(B); see *Murphy v. Kenneth Cole Productions, Inc.* [(2007)] 40 Cal.4th [1094,] 1114.)" (*Brinker, supra,* 53 Cal.4th at p. 1018.)

With respect to meal breaks, Labor Code section 512 provides in pertinent part at subdivision (a): "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee."

With respect to CPK's duty to provide rest periods, Wage Order No. 5 states in relevant part at subdivision 12(A): "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of *ten (10) minutes net rest time per four (4) hours or major fraction thereof.* However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours." (Cal. Code Regs., tit. 8, § 11050, italics added; *Brinker, supra,* 53 Cal.4th at p. 1028.) Thus, "[e]mployees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." (*Brinker, supra,* at p. 1029.)

2. *Pleadings*.

On November 1, 2007, Martinez and Lopez filed a first amended class action complaint alleging wage and hour violations against CPK. On April 22, 2008, Johnson filed a class action complaint, alleging similar wage and hour violations against CPK. On August 4, 2010, Hernandez filed a class action complaint, alleging similar Labor Code violations against CPK. The three cases

3

were related and plaintiffs presented a joint motion for class certification to the trial court.

Plaintiffs alleged, inter alia, that CPK failed to compensate employees for off-the-clock work, and that employees frequently worked off the clock, receiving no pay for time spent performing opening and closing duties and working through meal and rest breaks, even when they were clocked out for such breaks. Further, although CPK's written policies were "facially compliant," CPK chronically understaffed its restaurants, resulting in employees regularly missing meal and rest periods, taking their meal and rest periods late, or having those meal and rest breaks interrupted. In addition, CPK failed to furnish its employees with an accurate itemized wage statement showing all applicable hourly rates and total hours worked, in violation of section 226, subdivision (a).

3. *The motion for class certification.*

Plaintiffs' motion for class certification unsuccessfully sought to certify five subclasses of current or former CPK employees. Four of the subclasses are the subject of this appeal.[4] The four subclasses in issue are as follows:

(1) The Off-the-Clock Work Subclass, consisting of "[a]ny hourly paid employees of Defendant who worked at a restaurant location in California within four years prior to the filing of this complaint until the date of certification."

(2) The Meal Period Subclass, consisting of "[a]ny hourly paid employees of Defendant who worked a shift of more than five hours at a restaurant location in California at any time from May 2008 until the date of certification."

(3) The Rest Period Subclass, consisting of "[a]ny hourly paid employees of Defendant who worked a shift of four hours or more at a restaurant location in California from May 2008 until the date of certification."

---

[4] On appeal, plaintiffs do not challenge the trial court's denial of a fifth subclass pertaining to unreimbursed business expenses.

4

(4)  The Wage Statement Subclass, consisting of "[a]ny hourly employee of Defendant who worked in California within one year prior to the filing of this complaint and received one or more wage statement."

4. *Trial court's ruling*.

On May 13, 2011, following extensive briefing and argument, the trial court denied the motion for class certification for the reasons read into the record that day.  The trial court noted at the outset that in determining whether the requirements of class certification have been met, the court does not evaluate whether the claims asserted are legally or factually meritorious.  (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 439-440.)  Further, plaintiffs' burden on moving for class certification was not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues predominate.  (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108.)

Turning to the specific factors which the trial court must consider on a motion for certification, the trial court found as follows:

(a)  The requirement of *numerosity* was satisfied.  Plaintiffs claimed that CPK has 20,000 employees in the alleged classes.  CPK disputed that number, but did not seriously contest numerosity, especially considering that there are 80 locations in California.

(b)  The requirement of *ascertainability* also was met.  In defining an ascertainable class, the goal is to use terminology that will convey sufficient meaning to enable persons hearing the definition to determine whether they are members of the class plaintiffs wish to represent; this requires a class definition that is precise, objective and presently ascertainable.  (*Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 858.)  Here, ascertainability was satisfied for the subclasses that were being proposed by plaintiffs.

5

(c)  The requirement of *typicality* also was met.  Typicality requires that class representatives have the same interests and have suffered the same injuries as members of the proposed class.  Based on the evidence presented, the typicality factor had been met.

(d)  The requirement of *adequacy* also was satisfied.  The trial court found plaintiffs were adequate representatives and further found plaintiffs' counsel was more than adequate to represent the class.

(e)  The trial court then addressed the issue of *community of interest*, which was the "most hotly contested in this case."

(i)  *The Off-the-Clock work subclass*.

With respect to the proposed off-the-clock work subclass, the trial court found, inter alia:  "only 42 of the 89 declarations claim off-the-clock work.  If off-the-clock work was widespread resulting in a company policy or practice enough to merit class treatment, one would think that most, if not all, of plaintiff's small sample would have been able to report off-the-clock work.  [¶]  Therefore, the court concludes that the plaintiff's argument that there is a company policy of off-the-clock work is not supported by substantial evidence and the court finds that the claims of off-the-clock work cannot be established by common proof.  [¶]  The variance in evidence leads to the conclusion that this is really an individualized issue based on the employee, the manager, the shift, the restaurant, which will required hundreds, if not thousands, of mini-trials to determine if an employee worked off the clock, and if so, how much time was or was not recorded and whether the employee was paid for this off-the-clock work."

(ii)  *The meal period subclass*.

In this regard, the trial court found, inter alia:

"Plaintiff offers anecdotal evidence of declarations of approximately 35 of the 89 putative class members who offered declarations with regard to failure to provide meal breaks.  [¶]  Each of those declarations state that employees rarely, if ever, received premium pay for missed meal breaks.  18 of the 89 putative class

6

members declared that managers required employees to return to work during meal breaks. 21 declared that breaks were interrupted and not provided due to high customer demand and heavy workloads.

"Defendant's evidence shows that some of the testimony changed at deposition. Defendant points out 54 of the 89 plaintiff declarants did not testify to any missed or interrupted meal breaks at all or testified about experiences that predate the class period that plaintiff seeks to certify. [¶] If there was a common practice or policy regarding missed meal breaks to merit class treatment, presumably, it would be widespread, and then most, if not all, of plaintiff's sample would have been able to report some missed meal breaks. However, there is not substantial evidence to support that proposition. [¶] Based on the evidence submitted, it does not appear to be a companywide practice or policy regarding disallowance of meal breaks that can be established by common evidence. [¶] . . . [¶] The evidence suggests that in order for plaintiff to establish that defendant violated meal break laws, plaintiff would have to present an analysis restaurant by restaurant, shift by shift, manager by manager, perhaps employee by employee. This does not lend itself to class treatment. Thus, common proof would be absent and plaintiff would have to rely on individual evidence which would not be appropriate for class treatment."

(iii) *The rest period subclass*.

The trial court's analysis with respect to the rest period subclass was similar.

"Defendant points out many of the plaintiff's declarations as well as other class members have testified that they have never been denied a rest break and never had a rest break interrupted. [¶] Defendant points out that 55 of the 89 declarants do not testify that they missed any rest breaks or testified about experiences that predate the class period. [¶] Defendant cites the declaration of plaintiff's expert reflecting that the time records of the putative class members who worked shifts of more than four hours recorded ten-minute rest breaks in

7

99.42 percent of the time.  [¶]  According to the defendant, the data which plaintiff's expert, Dr. Lackritz, reviewed contained information about 33,135 shifts longer than four hours and showed that a full 10-minute break was recorded in all but 204 shifts.  [¶]  The analysis for the claimed missed rest break issue is similar to the analysis of the meal break claims and the off-the-clock claims.

"First, plaintiff has not demonstrated understaffing is amenable to common proof.  The court also finds that plaintiff has not demonstrated a violation of the rest break regulation is subject to common proof.  [¶]  Apparently, some percentage of class members experience violations while a larger percentage do not.  Plaintiff has not met the burden to show that there is a common policy or practice with respect to rest breaks which can be established by common evidence.  [¶]  The evidence suggests that in order for plaintiff to prove its claims that defendant violated the labor law of rest breaks, plaintiff would have to present an analysis restaurant by restaurant, shift by shift, manger by manager, employee by employee.  [¶]  The evidence that plaintiff has submitted does not support a common issue of a company policy or a company practice or even a regular occurrence, a regular custom, a regular habit, or course of conduct concerning rest breaks."

(iv)  *The wage statements subclass*.

In this regard, the trial court ruled:  "The plaintiff claims that there is a common issue of wage statements in this case.  In essence, this is a derivative claim of the off-the-clock meal and rest claims because the claim for insufficient wage statements is based upon the claim that the wage statement was deficient because of violations of the off-the-clock work law and the meal break law and the rest break law.

"Since the court finds that the claims with regard to the alleged off-the-clock work, the meal break and the rest periods are not amenable to class treatment because these claimed violations depend on individual proof, the court

8

concludes that the derivative wage statement class allegations are also based upon individualized evidence and also are not subject to common policy or proof."

(f) Lastly, the trial court addressed the issue of *superiority*, i.e., whether class treatment would be superior to individualized treatment in this case. The trial court "concluded that plaintiffs have not met the burden of showing that common questions predominate on the claims raised, and as a necessary corollary, class treatment would not be superior to individual treatment."

The trial court reasoned: "In this case, the trier of fact would have to determine: [¶] Did [CPK] employees actually work off the clock, and if so, how much time; [¶] Did the employer know or should have known that the employees were working off the clock; [¶] Did the employees receive any compensation for working off the clock; [¶] Did employees miss meal breaks; [¶] Were the meal breaks waived? If not waived, did they receive any compensation; [¶] Did employees miss rest breaks; [¶] Were the rest breaks waived; [¶] . . . [¶] Thus, the individual members of the putative class would have to litigate substantial and numerous unique questions before recovery may be allowed. [¶] In light of the size of the proposed class, there could be thousands of individualized mini-trials. [¶] Based upon this, the court finds the individual questions of proof predominate over common issues and class treatment is not superior to individual lawsuits. [¶] As a consequence, the court denies plaintiff's motion to certify this case as a class action."

This appeal followed.

## CONTENTIONS

Plaintiffs contend: the trial court's order denying class certification should be vacated because it rests on incorrect legal assumptions and incorrect criteria; *Brinker* changed the legal landscape such that the trial court operated under erroneous legal assumptions; the trial court erroneously assumed there is no such thing as a late meal period claim; the trial court erroneously assumed that theories based on "chronic understaffing" have been rejected by the courts; the trial court

9

erroneously assumed an employer's time records do not provide a common method of proof and therefore certification would result in numerous mini-trials in which class members would have to show why they did not take breaks; the trial court's order is based on incorrect criteria and is not supported by substantial evidence; the denial of the wage statement subclass is not supported by substantial evidence and is based on incorrect legal assumptions and incorrect criteria; and the trial court applied improper criteria in determining a class action is not superior to separate lawsuits by class members.

## DISCUSSION

1. *Standard of appellate review*.

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.] *Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence.* [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Brinker, supra,* 53 Cal.4th at p. 1022, italics added.)

2. *General principles*.

   a. *Class action requirements*.

Originally "creatures of equity, class actions have been statutorily embraced by the Legislature whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous,

10

and it is impracticable to bring them all before the court . . . .' [Citations.]" (*Brinker, supra,* 53 Cal.4th at p. 1021; Code Civ. Proc. § 382.)

The California Supreme Court has identified three requirements for the certification of a class: (1) "the existence of an ascertainable and sufficiently numerous class"; (2) "a well-defined community of interest"; and (3) "substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker, supra*, 53 Cal.4th at p. 1021.) The community of interest requirement in turn has three factors: (1) common questions of law or fact predominate over individual questions; (2) the class representatives have claims or defenses typical of the class; and (3) the class representatives can adequately represent the class. (*Ibid.*)

b. *The Brinker decision*.

In *Brinker*, the trial court certified a class of about 60,000 current and former nonexempt employees of defendant corporations that owned and operated several restaurant chains. (*Brinker, supra*, 53 Cal.4th at pp. 1017-1018, 1019, fn. 4.) The class action complaint alleged the defendants violated state laws requiring meal and rest breaks for nonexempt hourly employees and accurate recording of employee work time. (*Id*. at pp. 1018-1019.) The class definition included several subclasses, three of which were (1) a rest period subclass comprising all class members who worked one or more work periods in excess of three and a half (3.5) hours without receiving a paid 10 minute break during which the class member was relieved of all duties; (2) a meal period subclass comprising all class members who worked one or more work periods in excess of five (5) consecutive hours without receiving a thirty (30) minute meal period during which the class member was relieved of all duties; and (3) an off-the-clock subclass comprising all class members who worked off-the-clock or without pay during the subclass period. (*Id*. at p. 1019.)

11

The Court of Appeal granted writ relief and reversed class certification as to the three disputed subclasses. (*Brinker, supra,* 53 Cal.4th at p. 1021.) The California Supreme Court granted review "to resolve uncertainties in the handling of wage and hour class certification motions." (*Ibid*.)

With respect to the three subclasses, the Supreme Court concluded the trial court properly certified a rest break subclass, remanded the question of certification of the meal break subclass for reconsideration by the trial court, and concluded the trial court erred in certifying the off-the-clock subclass. (*Brinker, supra*, 53 Cal.4th at p. 1017.) After reviewing general class action principles, the Supreme Court addressed the extent to which a trial court must address the elements and merit of a plaintiff's claim when deciding whether to certify a class. (*Id*. at p. 1023.)

The Supreme Court confirmed a class certification motion should not be a vehicle for resolving the merits of a claim, but recognized that "[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them." (*Brinker, supra*, 53 Cal.4th at pp. 1023-1024.) The court concluded: "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them. Out of respect for the problems arising from one-way intervention, however, a court generally should eschew resolution of such issues unless necessary. [Citations.] Consequently, a trial court does not abuse its discretion if it certifies (or denies certification of) a class without deciding one or more issues affecting the nature of a given element if resolution of such issues would not affect the ultimate certification decision." (*Id*. at p. 1025.)

The Supreme Court then considered the scope of an employer's duties under relevant statutes and IWC wage orders to afford rest and meal periods to employees. (*Brinker, supra,* 53 Cal.4th at pp. 1027-1028.)

As to the rest break claim and subclass, the *Brinker* court clarified that the applicable wage order, Wage Order No. 5, requires an employer to provide an employee with a 10-minute rest break for shifts from three and one-half hours to six hours in length, a 20-minute rest break for shifts of more than six hours up to 10 hours, and a 30-minute rest break for shifts of more than 10 hours up to 14 hours. (*Brinker, supra*, 53 Cal.4th at p. 1029.) The defendant employers had a written rest period policy, applicable to all employees, under which employees were provided only one 10-minute rest break for every four hours worked, when they should be provided a second break after six hours. (*Id*. at p. 1033.) *Brinker* held the trial court properly certified a rest break subclass because "[c]lasswide liability could be established through common proof if [the plaintiffs] were able to demonstrate that, for example, [the employers] under this uniform policy refused to authorize and permit a second rest break for employees working shifts longer than six, but shorter than eight, hours." (*Ibid*.) *Brinker* recognized that "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment. [Citations.]" (*Brinker, supra,* 53 Cal.4th at p. 1033.)

Further as to the rest break subclass, *Brinker* observed that class certification did not depend on resolution of threshold legal disputes over the scope of the employer's rest break duties. (*Brinker, supra*, 53 Cal.4th at p. 1033.) *Brinker* emphasized it addressed the merit of those substantive disputes only at the parties' request. (*Id*. at pp. 1033-1034.) In general, and absent such a request, "[i]t is far better from a fairness perspective" to decide class certification independently from the merits. (*Id*. at p. 1034.)

13

As to the meal break claim and subclass, *Brinker* began by considering the nature and scope of an employer's duty to provide a meal period. (*Brinker, supra*, 53 Cal.4th at p. 1034.) It concluded that under the applicable statute and wage order, "an employer's obligation when providing a meal period is to relieve its employee of all duty for an uninterrupted 30-minute period." (*Id.* at p. 1038.) *Brinker* explained: "An employer's duty with respect to meal breaks [citations] is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law. [¶] On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay [citations]." (*Id.* at pp. 1040-1041.)

*Brinker* also resolved substantive issues regarding the timing of meal breaks. It held: "[A]n employer's obligation is to provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work." (*Brinker, supra,* 53 Cal.4th at p. 1049.)

Returning to the question of class certification, *Brinker* remanded the matter to the trial court to reconsider certification of the meal break subclass in light of its clarification of the law. (*Brinker, supra,* 53 Cal.4th at pp. 1049-1051.) *Brinker* explained: "Our subsequent ruling on [the plaintiffs'] meal timing theory, solicited by the parties, has changed the legal landscape; whether the trial court may have soundly exercised its discretion before that ruling is no longer relevant. At a minimum, our ruling has rendered the class definition adopted by the trial

14

court overinclusive: The definition on its face embraces individuals who now have no claim against [the employers]. In light of our substantive rulings, we consider it the prudent course to remand the question of meal subclass certification to the trial court for reconsideration in light of the clarification of the law we have provided." (*Id*. at pp. 1050-1051.)

As to the off-the-clock claim and subclass, the plaintiffs alleged the defendant employers required employees to perform work while clocked out during meal periods and did not afford them an uninterrupted 30 minutes. (*Brinker, supra*, 53 Cal.4th at p. 1051.) *Brinker* concluded substantial evidence did not support the trial court's conclusion that common issues predominated with respect to the off-the-clock subclass. (*Ibid*.) For the off-the-clock claim and subclass, the plaintiffs had presented no evidence of a uniform policy allegedly in conflict with the Labor Code and relevant IWC wage order. (*Brinker, supra,* at p. 1051.) The only formal employer policy disavowed off-the-clock work, and the plaintiffs presented no evidence of "a systematic company policy to pressure or require employees to work off-the-clock." (*Ibid*.)

With respect to the off-the-clock subclass, *Brinker* also based its decision on the plaintiff's failure to present evidence rebutting the presumption that an employee who has clocked out is performing no work. (*Brinker, supra,* 53 Cal.4th at p. 1051.) An employer's liability is contingent on proof the employer knew or should have known off-the-clock work was occurring, and "[n]othing before the trial court demonstrated how this could be shown through common proof, in the absence of evidence of a uniform policy or practice." (*Id*. at pp. 1051-1052.) "Instead, the trial court was presented with anecdotal evidence of a handful of individual instances in which employees worked off-the-clock, with or without knowledge or awareness by [the employers'] supervisors. On a record such as this, where no substantial evidence points to a uniform, companywide policy, proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off-the-clock, how long they

15

worked, and whether [the employers] knew or should have known of their work." (*Id*. at p. 1052.)[5]

### 3. *Trial court properly denied certification of the four subclasses in issue*.

#### a. *The off-the-clock work subclass; substantial evidence supports trial court's determination that common issues did not predominate*.

With respect to the off-the-clock work subclass, this case is similar to *Brinker*. There, the employer's formal employer policy disavowed off-the-clock work, and the plaintiffs presented no evidence of "a systematic company policy to pressure or require employees to work off-the-clock." (*Brinker, supra,* at p. 1051.)

Here, the evidence showed CPK's company policy expressly prohibits off-the-clock work. Its employee handbooks stated: "No Work Time Off the Clock . . . [¶] We realize CPK employees have a real team spirit – a willingness to help out in a pinch. Sometimes employees volunteer to stay and work if things get busy. Under law, we are required to account for all hours/time that you work as 'hours worked' even if you didn't intend it as such. While we appreciate the offer, we say, 'No, thank you . . . *clock-in please*!' [¶] Please do not perform any work – even if you intend to do it voluntarily – unless you're scheduled for the shift or you get prior approval." (Italics added.)

To the extent there were deviations from CPK's official policy prohibiting off-the-clock work, the trial court found common questions did not predominate.

---

[5] In a concurrence to her own opinion, Justice Werdegar sought to provide guidance on remand regarding the missed meal break issues. (*Brinker, supra,* 53 Cal.4th at p. 1052 (conc. opn. of Werdegar, J.).) The concurrence stated the Supreme Court did not endorse the employers' argument that the question why a meal period was missed renders meal period claims "categorically uncertifiable." (*Ibid*.) Justice Werdegar stated that if an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided. (*Id*. at p. 1053. (conc. opn. of Werdegar, J.).)

16

As indicated, the trial court found "only 42 of the 89 declarations claim off-the-clock work. If off-the-clock work was widespread resulting in a company policy or practice enough to merit class treatment, one would think that most, if not all, of plaintiff's small sample would have been able to report off-the-clock work. [¶] Therefore, the court concludes that the plaintiff's argument that is a company policy of off-the-clock work is not supported by substantial evidence and the court finds that the claims of off-the-clock work cannot be established by common proof. [¶] *The variance in evidence leads to the conclusion that this is really an individualized issue based on the employee, the manager, the shift, the restaurant, which will required hundreds, if not thousands, of mini-trials to determine if an employee worked off the clock,* and if so, how much time was or was not recorded and whether the employee was paid for this off-the-clock work." (Italics added.)

Given CPK's official policy prohibiting off-the-clock work and the variance in evidence with respect to the off-the-clock work circumstances of each individual employee, the trial court's refusal to certify the off-the-clock work subclass must be upheld.

   b. *The meal period subclass; trial court properly found common issues did not predominate.*

CPK's meal period policy, like its policy prohibiting off-the-clock work, is facially compliant. (*Brinker, supra*, 53 Cal.4th at p. 1041.) CPK's employee handbook specifically provides: "For California employees, CPK's policy authorizes and permits meal breaks as follows: [¶] Employees working five hours or more will be provided the opportunity to take an uninterrupted meal break of 30 minutes." Plaintiffs have conceded the facial validity of CPK's meal period policies.[6]

---

[6]     Plaintiffs' motion for class certification argued: "*Although [CPK's] written meal period policies may be facially compliant*, those policies are not indicative of CPK's actual practices. In reality, the under-staffing of CPK restaurants resulted

17

Because CPK's official meal period policy was facially valid, the issue is whether, notwithstanding CPK's stated policy, there existed a systematic company policy to deny employees the meal breaks to which they were entitled.

CPK submitted numerous declarations which disputed plaintiffs' claim that employees could only take a meal break if they affirmatively asked for one. For example, employees at the Bakersfield and Manhattan Beach stores self manage their breaks. Employees at the downtown Los Angeles store "are responsible for making sure they take their breaks." A declaration from a Los Angeles employee stated "Nobody tells me when to take my breaks." A declaration from a Manhattan Beach employee stated: "I am not required to obtain permission from a manager before taking a break." A declaration from a Marina del Rey employee stated the same. An employee in San Luis Obispo stated: "The time of day I take my breaks is at my discretion."

In this regard, the trial court stated: "Plaintiff offers anecdotal evidence of declarations of approximately 35 of the 89 putative class members who offered declarations with regard to failure to provide meal breaks. [¶] . . . [¶] *If there was a common practice or policy regarding missed meal breaks to merit class treatment, presumably, it would be widespread, and then most, if not all, of plaintiff's sample would have been able to report some missed meal breaks.* However, there is not substantial evidence to support that proposition. [¶] Based on the evidence submitted, it does not appear to be a companywide practice or policy regarding disallowance of meal breaks that can be established by common evidence. [¶] . . . [¶] *The evidence suggests that in order for plaintiff to establish that defendant violated meal break laws, plaintiff would have to present an analysis restaurant by restaurant, shift by shift, manager by manager, perhaps*

in putative class members regularly missing meal and rest periods, taking their meal and rest periods late, or have those meal and rest breaks interrupted." (Italics added.)

18

*employee by employee*.[7] This does not lend itself to class treatment. Thus, common proof would be absent and plaintiff would have to rely on individual evidence which would not be appropriate for class treatment." (Italics added.)

On this record, the trial court properly found that common questions did not predominate with respect to the meal period subclass. We note in particular the declarations submitted by various employees on CPK's behalf, asserting they self-managed their own breaks. Given the lack of uniformity among the putative class members on this issue, the trial court properly refused to certify the meal period subclass.

c. *The rest period subclass; on the record presented below, the trial court properly found common issues did not predominate.*

In seeking class certification with respect to the rest period subclass, plaintiffs' theory below was as follows: "[T]he following common questions of fact and law predominate: [¶] Did Defendant's rest period practices, which only allow employees to take rest periods if they affirmatively ask for one and receive affirmative authorization from supervisors, lead to putative class members not being provided rest periods? [¶] Did Defendant maintain a practice of understaffing CPK restaurants? [¶] Did Defendant's practice of understaffing the CPK restaurants coupled with employees being required to attend to customers' needs lead to putative class members not being able to take full, uninterrupted rest periods?"

As indicated, the trial court found common questions did not predominate with respect to the rest period subclass, stating "the "analysis for the claimed missed rest break issue is similar to the analysis of the meal break claims and the off-the-clock claims. [¶] First, plaintiff has not demonstrated understaffing is amenable to common proof. The court also finds that plaintiff has not

---

7     This aspect of the trial court's ruling disposes of plaintiffs' late meal period claim as well as their missed meal period claim.

demonstrated a violation of the rest break regulation is subject to common proof. [¶] Apparently, some percentage of class members experience violations while a larger percentage do not. Plaintiff has not met the burden to show that there is a common policy or practice with respect to rest breaks which can be established by common evidence."

When reviewing an order denying class certification, appellate courts " 'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial.' " (*Jaimez v. DAIOHS USA, Inc*. (2010) 181 Cal.App.4th 1286, 1297-1298.) Nonetheless, on appeal, plaintiffs seek to inject a new issue into the case. Plaintiffs now contend CPK's rest period policy is facially invalid in the wake of *Brinker*. As noted, *Brinker* held the applicable wage order, Wage Order No. 5, requires an employer to provide an employee with a 10-minute rest break for shifts lasting from three and one-half hours to six hours in length, and *20 minutes* of rest for shifts lasting more than 6 hours to 10 hours. (*Brinker, supra*, 53 Cal.4th at p. 1029.) Thus, after working six hours, an employee is entitled to a second 10-minute break. (*Ibid*.) Here, CPK's policy was slightly different. Its handbook stated: "Employees are also entitled to a paid, 10-minute rest break for every 3.5 hours worked." CPK's policy meant that an employee would be entitled to a second 10-minute break for a seven-hours shift, rather than after working a shift longer than 6 hours. [8]

However, unlike in *Brinker*, plaintiffs herein did not litigate how much rest time must be authorized. Their arguments, set forth above, did not challenge CPK's rest period policy as being contrary to Wage Order No. 5. Further, plaintiffs did not develop a record below to support their new theory that a subclass should be certified for CPK employees who worked a shift of at least six

---

[8] CPK's policy of a 10-minute break for every 3.5 hours worked would provide an employee with two 10-minute breaks during a seven hour shift. Thus, the controversy here with respect to rest periods pertains only to shifts lasting *longer than six hours but less than seven hours*.

hours *but less than seven hours*, and who were denied a second rest period. Therefore, the issue is not properly before this court.

In sum, on the record presented, the trial court properly refused to certify the proposed rest period subclass.

### d. *The wage statement subclass.*

As indicated, the trial court found the wage statement claim was "a derivative claim of the off-the-clock meal and rest claims because the claim for insufficient wage statements is based upon the claim that the wage statement was deficient because of violations of the off-the-clock work law and the meal break law and the rest break law. [¶] Since the court finds that the claims with regard to the alleged off-the-clock work, the meal break and the rest periods are not amenable to class treatment because these claimed violations depend on individual proof, the court concludes that the derivative wage statement class allegations are also based upon individualized evidence and also are not subject to common policy or proof."

On appeal, plaintiffs "have no quarrel with the reasoning that the wage statement claim is derivative of the other claims." Our decision upholding the denial of certification with respect to the off-the-clock work, meal period and rest period subclasses is dispositive of the wage statement subclass.

### 4. *Remaining issues not reached.*

Substantial evidence supports the trial court's determination that common issues did not predominate with respect to the four subclasses in issue. Therefore, it is unnecessary any remaining arguments.

21

## DISPOSITION

The order denying class certification is affirmed.  The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.

22